## Commonwealth *v.* Conyers, Appellant.

Submitted June 16, 1975. Before WATKINS, P.J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Joseph F. Castellino*, for appellant.

*William J. Perrone*, Assistant District Attorney, and *Patrick J. Toole, Jr.*, District Attorney, for Commonwealth, appellee.

388

OPINION BY PRICE, J., February 2, 1976:

Appellant was tried and convicted of defiant trespass by a judge sitting without a jury. Post-trial motions were denied and appellant was sentenced to 6 to 12 months in the Luzerne County Prison. On appeal, appellant argues three alleged points of error, all without merit. We will, therefore, affirm the judgment of sentence of the lower court.

The background of this case is most unusual. Appellant and Adrienne McGlynn had been engaged in an amorous relationship since 1970. They had on various occasions lived together and at other times their relationship was stormy. The present unpleasantries stem from an altercation which occurred on March 4, 1970.

Appellant came to Miss McGlynn's house at around 4:00 p.m. to see her. The record reveals that the parties had spent the previous evening together and that appellant was not anticipating the problems which were to confront him. Appellant arrived at Miss McGlynn's house on March 4, but did not receive the warm, loving welcome he expected. Quite the contrary, he was told by Miss McGlynn to go away and leave her alone.

Appellant persisted in his endeavor to gain entrance to the house, and Miss McGlynn persisted in her admonitions that he was to leave and not attempt to enter the house. Appellant, at a loss to understand the sudden coolness on the part of his paramour, became more determined to gain admittance and confront Miss McGlynn. Appellant decided to make the final assault on the rear door. However, this course of action nearly proved fatal. Appellant began to pound on the back door and, in spite of adamant warnings by Miss McGlynn, broke in the door and started to enter the house.

Miss McGlynn defended her home in a most emphatic manner; *i.e.*, she shot appellant once in the "flank" and

twice in the "hindquarters."[1] Appellant, not mortally wounded, maintained his composure and took the gun in order to avoid further gunplay. The police and an ambulance were summoned, appellant was charged with defiant trespass, and Miss McGlynn was charged with aggravated assault. In a magnificient display of chivalry, appellant refused to testify against Miss McGlynn. She, however, did not share the same reluctance to take the stand, and appellant was convicted of a misdemeanor of the third degree.

The crime of defiant trespass occurs when a person remains in a place where he is not privileged to remain after notice of trespass is given.[2] Appellant argues in his first two points of alleged error that the Commonwealth failed to establish either scienter or the necessary mens rea to sustain the finding of guilt. We find no merit to this argument.

Although appellant was a frequent visitor and even resided with Miss McGlynn on occasion, there is no doubt that the house belonged to Miss McGlynn and her brothers and that appellant did not own the house nor did he reside in it on the date in question. Miss McGlynn repeatedly informed appellant that he was to leave the

---

1. There is some confusion as to how many times appellant was shot. The police testified that there were three bullet holes in the "hindquarters" and one in the "flank," but Miss McGlynn testified she shot appellant three times.

2. 18 Pa.C.S. §3503(b) provides:

"(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor;

. . .

(2) An offense under this subsection constitutes a misdemeanor of the third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. Otherwise, it is a summary offense."

premises and was not to enter the house. In the face of stern warnings, communicated to appellant, he attempted to forcibly enter the house. Appellant deliberately carried out this course of behavior knowing that he was not privileged to remain on the premises. While he certainly did not expect to be shot for it, we must conclude he knew he had no right to break into the house.

Finally, appellant argues that Miss McGlynn was his common law wife and as such she should not have been permitted to testify against him. The existence of a common law marriage was not raised until after the trial and the actual existence of such a relationship is not at all obvious. This situation was directly covered by *Commonwealth v. Stots*, 436 Pa. 555, 261 A.2d 577 (1970). Our Supreme Court there held that the competency of a witness to testify must be raised at trial or it will be waived, and that only in cases where there is no question that the parties are married is spousal incompetency not waivable. Here there was no evidence indicating a common law marriage, and the trial judge was under no duty to raise the issue. We must conclude that appellant has waived this point.[3]

The Judgment of Sentence is affirmed.

SPAETH, J., concurs in the result.

HOFFMAN, J., dissents.

---

3. As a final aside to this case, appellant and Miss McGlynn were married sometime after trial.