443 A.2d 322

**COMMONWEALTH of Pennsylvania**

v.

**Frederick CANNON, Appellant.**

Superior Court of Pennsylvania.

Submitted May 5, 1981.

Filed March 19, 1982.

Petition for Allowance of Appeal Denied June 30, 1982.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for attempted burglary and criminal trespass. Appellant argues that the evidence was insufficient to sustain either of his convictions. We have concluded that the evidence was sufficient to sustain the conviction of attempted burglary, but insufficient to sustain the conviction of criminal trespass. We therefore affirm the judgment of sentence for attempted burglary and vacate the judgment of sentence for criminal trespass.[1]

In deciding the sufficiency of evidence, we must first accept as true all the evidence upon which the trier of fact could properly have based the verdict, and then ask whether that evidence, with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Fortune*, 456 Pa. 365, 367, 318 A.2d 327, 328 (1974); *Commonwealth v. Petrisko*, 442 Pa. 575, 579–89, 275 A.2d 46, 49 (1971). However, guilt must be proved and not conjectured. *Commonwealth v. Wilson*, 225 Pa.Superior Ct. 513, 312 A.2d 430 (1973). So regarded, the evidence may be summarized as follows.

Minnie Jaffe lived with her husband at 1611 Pine Street, Philadelphia. The house had a back yard, about 12 feet deep. There was no furniture in the yard; only a central air conditioner and some plants. The yard was enclosed by a fence 10 or 11 feet high, with a door that opened onto an alley, which runs parallel to Pine Street and leads to Smedley Street, which is at right angle to Pine Street. On June 28, 1977, at about 3:55 a. m., Mrs. Jaffe heard noises in the alley, like the "[r]attling of a trash can." N.T. 10. She was in her bedroom at the back of the house, half awake. After a few minutes, she heard the door in the fence open. She jumped out of bed and looked out into the back yard. It was very dark in the yard and all she could see was the door

---

1. Because of this disposition we do not reach appellant's additional argument that "[s]ince the evidence discloses that both offenses were committed by the same act, . . ., it was improper to impose separate terms for both of them." Appellant's Brief at 16.

in the fence standing open; she could see that because light from the alley came through the open door. The door had been locked. She turned on her light and called the police, who arrived "almost immediately." N.T. 11.

Officer Vincent Monacelli testified that he was among the police who responded to Mrs. Jaffe's call. He drove east on Pine, made a left turn onto Smedley, and went about 50 feet to where the alley in back of the Jaffe house intersects with Smedley. He got out of his car and saw appellant "coming out of the rear yard door at 1611 Pine Street," two houses away from where he stood. N.T. 20, 22–23. Assisted by other officers, he took appellant into custody. He then examined the door in the fence and found the lock "knocked off the hinges" with wood splinters lying around. N.T. 20. He did not find "anything that might be called a tool" either on appellant or in the area. N.T. 23–24.

Appellant testified that he was walking home, intoxicated, on Smedley Street. He denied walking in the alley or being in the Jaffe yard. He said that when he was arrested, he was walking on Smedley, past the alley, towards Pine. N.T. 32–33.

1

■ The crime of burglary is defined as follows:

A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S. § 3502(a).

The crime of attempt is defined as follows:

A person commits an attempt when, with the intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S. § 901(a).

The Commonwealth therefore had to prove two distinct intents on the part of appellant: the intent to enter "a building or occupied structure, or separately secured or

occupied portion thereof," and the intent to commit a crime after entering. *See Commonwealth v. Morgan*, 265 Pa.Superior Ct. 225, 401 A.2d 1182 (1979); *Commonwealth v. Jacobs*, 247 Pa.Superior Ct. 373, 372 A.2d 873 (1977). Appellant contends that the Commonwealth failed to prove either intent.

Intent may be proved by direct evidence or inferred from circumstantial evidence. *Commonwealth v. Morgan, supra; Commonwealth v. Madison*, 263 Pa.Superior Ct. 206, 397 A.2d 818 (1979). Here, the direct evidence was appellant's testimony as to his intent. However, it was the responsibility of the lower court, which heard the case without a jury, to appraise that testimony, and it is apparent that the court rejected it. The question, therefore, is whether the court was justified in inferring appellant's intent from the circumstantial evidence.

It is plain that the court could find that appellant had forcibly entered the Jaffe back yard. Appellant argues, however, that the court could not find that he entered the back yard in order to enter the Jaffe house:

Nothing about entering the yard to a house necessarily connotes an intent to enter the house itself. Certainly, one might enter for a myriad of reasons (to relieve oneself, to sleep in an unexposed place, to see if there was anything to be taken from the yard) with no design to attempt the far more serious and dangerous breaking into a private home. In this case, moreover, the requisite intent is persuasively negated by Mr. Cannon's decision to leave the yard and return to the street without any attempt to enter the residence.

Brief for Appellant at 11–12.

While this argument has some force, we are not persuaded by it.

Appellant did not just enter the yard; he broke in through a locked gate under cover of darkness. We think the lower court could infer that appellant would not have gone to such extremes to seek entry for just any of a "myriad of rea-

sons." Moreover, appellant did not testify that he had entered the yard for an innocent purpose; he denied being in the Jaffe yard at all. While nothing could be inferred from appellant's silence had he not testified, the lower court could infer from the fact that he testified falsely that his true purpose in entering the yard was an illicit one, which he wished to conceal. Finally, the yard was small; once the door to it was opened, it would have been apparent that it contained only the central air conditioner and some plants— not the sort of thing one enters a yard to take away. We think these facts support a reasonable inference that in entering the yard, appellant intended to cross to the house, enter it, and once inside, commit the crime of theft.

In *Commonwealth v. Morgan, supra,* we had to make a similar decision. There, the complainant was awakened by his doorbell ringing. He saw the defendant outside but did not respond or otherwise let it be known that he was at home. The defendant again rang the bell, and after receiving no answer, went to the back of the house. Upon hearing his back door rattle, the complainant called the police, who, in a matter of minutes, came to the house and found the defendant cutting a hole through the back door with a wire cutter. *Id.* 265 Pa.Superior Ct. at 232–33, 401 A.2d at 1185. We concluded that a jury could properly infer from these facts that the defendant intended not only to break into the house, but also to commit theft once inside. We reasoned:

> The incident involved a residence, which one ordinarily expects to contain items of value that can be removed by a single individual without the use of special tools. *See Commonwealth v. Madison, supra; Commonwealth v. Brown,* 226 Pa.Superior Ct. 172, 313 A.2d 290 (1973) (SPAETH, J. dissenting). Furthermore, appellant tried to determine whether the residence was occupied before attempting entry, which suggests that his intent was to commit theft, rather than some other crime requiring the presence of a victim. *Commonwealth v. Madison, supra.* Similarly, appellant acted under cover of darkness, but early on a summer evening, when he could conclude from

the lack of response to his ring that the occupants of the residence were away, which would allow him to pursue his task without interruption.

*Id.*, 265 Pa.Superior Ct. at 236, 401 A.2d at 1187.

Without question, the evidence in *Commonwealth v. Morgan, supra*, was stronger than was the evidence here. There was no evidence that appellant had in any way tampered with the back door to the Jaffe house—so far as appears, he never reached it—and no tool, such as a wire cutter, was found. Still, we think there was enough evidence. The lower court might have reasoned as follows:

When Mrs. Jaffe heard a sound like the rattling of a trash can, she continued to lie in her bed. Appellant may have believed that when rattling a trash can evokes no response from a darkened house at 3:55 a. m., the house is empty. Appellant's action of breaking the lock off the door in the fence, splintering the wood, is consistent with such a belief. It was only after appellant had entered the backyard that Mrs. Jaffe turned on her light and called the police. When he saw the light, appellant must have realized that the house was not unoccupied, and must at least have suspected that his entry into the back yard had been detected. Therefore, instead of proceeding to the back door of the house and trying to enter the house, he left—only to walk into the police.

2

There are two distinct crimes of criminal trespass. The more serious is trespass of a building or occupied structure. It is defined as follows:

(a) Buildings and occupied structures.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:

(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or

(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

(2) An offense under paragraph (1)(i) is a felony of the third degree, and an offense under subparagraph (1)(ii) is a felony of the second degree.

(3) As used in this subsection:

"Breaks into." To gain entry by force, breaking, intimidation, unauthorized opening of locks, or through an opening not designed for human access.

18 Pa.C.S. § 3503(a).

The less serious is defiant trespass. It is defined as follows:

(b) Defiant trespasser.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or

(iii) fencing or other enclosure manifestly designed to exclude intruders.

(2) An offense under this subsection constitutes a misdemeanor of the third degree if the offender defies an order to leave personally communicated to him by the owner of the premises or other authorized person. Otherwise it is a summary offense.

18 Pa.C.S. 3503(b).

■ Appellant was charged with and convicted of trespass of a building or occupied structure; he was not charged with defiant trespass. Appellant argues that the evidence was insufficient to support a finding that he broke into "any building or occupied structure or separately secured or occupied portion thereof."

It is plain that the evidence that appellant broke into the Jaffe back yard was insufficient to show that he broke into a "building or occupied structure." A yard is not a "building." Section 3501 of the Crimes Code defines "occupied structure," as the term is used in regard to the crimes of burglary and criminal trespass, to mean "[a]ny structure, vehicle, or place adapted for overnight accommodation of

persons, or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S. § 3501. A yard is not a "structure," and the evidence is that the Jaffe yard was neither a "place adapted for overnight accommodation of persons" nor a place for "carrying on business."

The Commonwealth argues, however, that the phrase "separately secured or occupied portion thereof" provides the statutory proscription against appellant's conduct. According to the Commonwealth, the fenced-in yard was "a separately secured portion" of the Jaffe house. This argument is without merit, for it seeks to expand the definition of "occupied structure" in a manner clearly not intended by the legislature. The provision regarding criminal trespass was taken from the Model Penal Code. See Model Penal Code, Proposed Official Draft § 221.2. The Commentary to the Model Penal Code refers us to the Commentary on burglary for an understanding of what constitutes "a separately secured portion" of a building. See Model Penal Code § 221.2 T.D. 11 at p. 67, referring to Model Penal Code, § 221.1, T.D. 11. The Commentary states:

> The provision as to separately secured or occupied portions of buildings and structures takes care of the situation of apartment houses, office buildings, steamships with many private cabins, etc., where occupancy is by unit. It is the unit rather than the structure which must be safeguarded, even against the occupants of other units in the same structure.

Id. § 221.1, T.D. 11, p. 59 (footnote omitted).

■ Further evidence that the legislature did not intend to include breaking into a fenced-in yard within the proscription of criminal trespass of buildings is the fact that such conduct is specifically proscribed by the provisions regarding defiant trespass. Had the Commonwealth so charged, appellant clearly could have been found to be a "defiant trespasser," for, "knowing that he [was] not licensed or privileged to do so," he entered a place "as to which notice against trespass [was] given by . . . fencing or other enclosure manifestly designed to exclude intruders."

18 Pa.C.S. § 3503(b)(1)(iii). When one statute specifically proscribes certain conduct, then another general statute carrying a more severe punishment will be held inapplicable, for we assume that the legislature intended the specific statute to control. *See generally,* La Fave and Scott, *Criminal Law,* § 10 (1972).

■ The judgment of sentence for attempted burglary is affirmed. The judgment of sentence for criminal trespass is vacated, and as to that offense, appellant is discharged.[2]

---

**2.** We see no need to remand for resentencing on the attempted burglary conviction. Since the sentences were concurrent, it is apparent that a remand would only result in re-imposition of the same sentence. *Commonwealth v. Eberts,* 282 Pa.Superior Ct. 354, 422 A.2d 1154 (1980); *Commonwealth v. Guenzer,* 255 Pa.Superior Ct. 587, 389 A.2d 133 (1978).