654 A.2d 541

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Michael HAGAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1994.

Decided Feb. 15, 1995.

610

John W. Packel, Helen A. Marino, Philadelphia, for M. Hagan.

Catherine Marshall, Ronald Eisenberg, Helen Kane, Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

Appellant, Michael Hagan, appeals from an order and memorandum opinion of the Superior Court affirming a judgment of sentence of the Court of Common Pleas of Philadelphia for

counts of burglary, theft by unlawful taking, theft by receiving stolen property, criminal trespass, and criminal conspiracy.

We granted allocatur to determine whether a fenced storage lot was an "occupied structure" for the purposes of our burglary and criminal trespass statutes. We conclude that such a lot is an "occupied structure" and, accordingly, affirm the order of the Superior Court.

The pertinent facts in this case are as follows. Morris Iron and Steel ("Morris") owned a lot located at 4800 Rhawn Street, Philadelphia. This lot was enclosed by a chain link fence and secured at the gate by a lock and chain. The site had been previously used as a manufacturing site by Morris, but was no longer in active use in that capacity. Thus, the lot contained two inactive and vacant buildings. Morris used the lot to store several tons of railroad steel.

On June 10, 1991, Appellant Hagan and his accomplice backed a pickup truck into the driveway of the Rhawn Street facility. They broke the chain and lock securing the gate to the site and entered the lot. Then, they arranged the steel and iron found at the lot into several piles near their truck.

Stanton Greller, manager of Morris, drove by the Rhawn Street site on a routine check of the property. He noticed the pick-up truck in the driveway and saw Hagan and his accomplice attempting to pry-open the lock and chain securing the gate. Greller contacted the police and informed them of what he had witnessed. The police arrived and arrested the pair. They were subsequently charged with burglary[1], theft by unlawful taking[2], theft by receiving stolen property[3], criminal trespass[4], and criminal conspiracy[5]. Following a bench trial, Hagan was found guilty on all charges and was sentenced to concurrent terms of two years of probation on each count.

1. 18 Pa.S.C. § 3502
2. 18 Pa.C.S. § 3921
3. 18 Pa.C.S. § 3925
4. 18 Pa.C.S. § 3503
5. 18 Pa.C.S. § 903

These convictions were affirmed by a panel of the Superior Court.

■ In this appeal, Hagan asserts that the evidence was insufficient to convict him on the burglary and criminal trespass counts because a fenced storage lot is not an "occupied structure" within the meaning of those two statutes. It is well settled that the test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt. *Commonwealth v. Williams*, 532 Pa. 265, 272, 615 A.2d 716, 719 (1992); *Commonwealth v. Rhodes*, 510 Pa. 537, 540, 510 A.2d 1217, 1218 (1986).

■ Both our burglary and criminal trespass statutes have a required element of breaking and entering a "building or occupied structure, or separately secured portion thereof." 18 Pa.C.S. § 3502(a) (burglary)[6]; 18 Pa.C.S. § 3503(a) (criminal trespass).[7] It is undisputed by the parties that the Rhawn Street site is not a "building" within the meaning of these statutes. Thus, for Hagan's conviction to be upheld, the site would have to be an "occupied structure." 18 Pa.C.S. § 3501 defines an occupied structure as "any structure, vehicle, or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present." Thus, any "place ... adapted ... for

6. 18 Pa.C.S. § 3502(a) provides in pertinent part;
A person is guilty of burglary if he enters a building or occupied structure, or separately secured portion thereof, with the intent to commit a crime therein, unless the premises are at that time open to the public or the actor is licensed or privileged to enter.

7. 18 Pa.C.S. § 3503 provides in pertinent part:
A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
(i) enters, gains entry by subterfuge or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof; or
(ii) breaks into any building or occupied structure or separately secured or occupied portion thereof.

carrying on a business therein ..." is an occupied structure for the purposes of the burglary and criminal trespass statutes.

We find that a fenced and secured storage lot is a "place adapted for carrying on a business." Simply put, storage is a business activity no less than any other facet of a business such as manufacturing, retail sales or distribution. This was the holding of the Superior Court in *Commonwealth v. Evans*, 393 Pa.Super. 500, 574 A.2d 1051 (1990), *appeal denied*, 527 Pa. 597, 589 A.2d 688 (1990). *Evans* actually consisted of two consolidated cases, both involving storage lots. In the first of these consolidated cases, the defendant was found in the tank farm area of a refinery. This area was surrounded by a six foot high chain link fence in which a large hole was discovered. The defendant and his accomplice were caught removing aluminum sheeting from the side of a tank and were arrested. In the second case, the defendant was arrested in a bus storage yard completely surrounded by a fence and secured by a locked gate. The defendant was observed removing window frames from the buses and was arrested. The defendants in both of these cases were charged with criminal trespass and in each case the charges were dismissed by the trial court. The Superior Court reversed and held that the defendants could be charged with criminal trespass. The court stated:

> Surely the storage of buses and petroleum products furthers the business purposes of SEPTA and ARCO. We conclude that the fenced enclosures which appellees are accused of breaking into are 'places adapted for carrying on a business therein' and are therefore 'occupied structures'....

*Evans*, 393 Pa.Super. at 506, 574 A.2d at 1054.

■ We are in accord with the reasoning of the Superior Court in *Evans*. We agree the very act of storage is an activity that furthers the purpose of a business. Thus, any secured facility where goods are stored is a place adapted for the carrying on a business and, therefore, an occupied structure for the purposes of the criminal trespass and burglary statutes.

This holding, we believe, is in accord with the common law rationale for the offense of burglary. Under the common law, burglary was "a forcible invasion of the right of habitation." *Commonwealth v. LeGrand*, 336 Pa. 511, 518, 9 A.2d 896, 899 (1939) (quoting 4 Blackstone, Commentaries 223). In *Le Grand* we noted that under the common law burglary was a "very heinous offense" where "[e]very burglar is a potential assassin and when his felonious purpose encounters human opposition his intent to steal becomes an intent to kill. . . ." *Id.* Thus, the requirement that the burglar enter an "occupied structure" in our present statute reflects the concern for human safety found in the common law offense. Our holding today is likewise motivated by a concern for human safety. It is a common sense conclusion that storage facilities used in the carrying on of a business are a natural attraction for the criminal element. It is also a common sense conclusion that employees will be present at the such sites in varying degrees to maintain, secure, and utilize the storage facility. Thus, it is often possible that a burglar will encounter an employee, such as a guard securing the facility or an employee making a routine delivery, in the course of committing his crime. As Blackstone noted, this encounter will often turn violent when the burglar encounters human opposition. In the instant case, the facility manager testified that he and his employees entered the yard regularly. Notes of Testimony 1/10/92 at 15, 21–22. Thus, the defendant and his accomplice could just have easily broken into this facility while a Morris employee was present at the site creating the possibility of a violent confrontation.

Appellant argues that the term "occupied structure" must be interpreted narrowly to include only a building or similar structure. However, our canons of statutory interpretation instruct that the plain words of a statute cannot be disregarded where the language is free and clear from ambiguity. *Commonwealth v. Harner*, 533 Pa. 14, 20, 617 A.2d 702, 705 (1992); *Commonwealth v. Corporan*, 531 Pa. 348, 351, 613 A.2d 530, 531 (1992); 1 Pa.C.S. § 1921(b). When a statute's meaning is plain, there is no occasion for resorting to

rules of statutory interpretation when doing so would alter the plain meaning of the statute. *Commonwealth v. Bell*, 512 Pa. 334, 340, 516 A.2d 1172, 1175 (1986). *See also Marshall v. Port Authority of Allegheny County*, 524 Pa. 1, 6, 568 A.2d 931, 934 (1990) ("In cases where the language is clear and explicit, consideration of arguments based upon supposed contrary legislative intent is improper.") In the instant case, Section 3501 defines an occupied structure as "[a]ny structure, vehicle or place adapted . . . for the carrying on business therein." The plain meaning of this statute is much broader than the narrow interpretation urged by the Appellant. The inclusion of "any vehicle" in the statute demonstrates that the legislature did not intend to limit this statute to buildings. Instead, the plain language of the statute includes "any place adapted for carrying on business therein" as an "occupied structure." We find a fenced and secured storage lot to be within the plain language of Section 3501. Therefore, we find resort to other methods of statutory construction offered by the Appellant to be unhelpful.

■ Hagan also argues that finding a fenced storage lot an "occupied structure" is inconsistent with the Superior Court's decision in *Commonwealth v. Cannon*, 297 Pa.Super. 106, 443 A.2d 322 (1982). In *Cannon*, the Superior Court was confronted with the question of whether a fenced and locked backyard was an "occupied structure" sufficient to support a conviction for criminal trespass. The court vacated the conviction holding that such a yard was neither a place adapted for overnight accommodation nor a place adapted for carrying on business. We find that the plain language of Section 3501 supports the conclusion of the Superior Court in *Cannon* and dictates the result that residential backyards are not protected under the criminal trespass and burglary statutes, while fenced and locked commercial lots are. Hagan argues that such a conclusion is absurd and, therefore, contrary to our canons of statutory interpretation. *See* 1 Pa.C.S. § 1922(1) (in construing statutes, we presume the legislature did not intend an absurd result). The Superior Court in *Evans* considered

this argument and rejected it. We agree with the Superior Court when it held:

> The actual result of our holding is to afford fenced locked business property, where equipment and material may be stored, more protection than private residences' *backyards* which are not adapted for overnight accommodations. We do not consider such a result absurd.

*Evans*, 393 Pa.Super. at 507, 574 A.2d at 1055.

Utilizing the principles set forth above, we have reviewed the evidence and hold that, when viewed in the light most favorably to the Commonwealth, this evidence establishes beyond a reasonable doubt that Morris was "carrying on business therein" at the Rhawn Street site for the purposes of 18 Pa.C.S. § 3501 and § 3502. The record reveals that the Morris facility was surrounded by a fence with barbed wire. Notes of Testimony 1/10/92 at 20. The gate to the facility was secured by a lock and chain, and was also blocked by a large trailer truck to keep people out. *Id.* at 16. The facility had several signs indicating that it was owned by Morris. *Id.* at 25, 34. One of these signs was "larger than [a] courtroom." *Id.* at 51. Other signs stated the company name, phone number, and told trespassers to "keep out." *Id.* at 19. Although the facility had not been in operation for six months *Id.* at 31, Morris used it to store steel that had been purchased from a railroad. *Id.* at 17. The value of the steel at issue in this case was between $2000 and $2600. *Id.* at 18. Several years prior to the incident that is the subject matter of this case, Morris spent several thousand dollars cleaning the facility and securing it from illegal dumpers. *Id.* at 40. The record clearly indicates that Morris employees were "in the yard regularly." *Id.* at 21. Stanton Greller, the facility manager, testified that he had been to the site on "the day before [the incident], the week before and so forth." *Id.* at 15. He stated that he went into the property and rode by it on a regular basis. *Id.* at 21–22. He also testified that other employees entered the yard regularly. *Id.* at 21. In fact, he testified that his foreman checked the site every morning. *Id.* at 45–46. This evidence is sufficient to establish that the

Rhawn Street facility was an "occupied structure," and, therefore, to sustain the Appellant's convictions for burglary and criminal trespass.

■ Appellant also argues that his actions are more properly defined as a defiant trespass rather than a criminal trespass. A person commits the offense of defiant trespass if "knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given...." 18 Pa.C.S. § 3503(b). Defiant trespass is normally committed when a person enters or remains in a place where he is not privileged to remain after notice of trespass is given. *See Armes v. City of Philadelphia*, 706 F.Supp. 1156 (E.D.Pa.1989), *aff'd*, 897 F.2d 520 (3d Cir.1990) (abortion protesters convicted of defiant trespass for entering grounds of clinic); *Commonwealth v. Downing*, 511 Pa. 28, 511 A.2d 792 (1986) (non-student convicted of defiant trespass for refusing to leave a law school library); *Commonwealth v. Sherlock*, 326 Pa.Super. 103, 473 A.2d 629 (1984) (defendant convicted of defiant trespass after failing to leave the front yard of girlfriend's house); *Commonwealth v. Conyers*, 238 Pa.Super. 386, 357 A.2d 569 (1976) (defendant convicted of defiant trespass after attempting to enter girlfriends's house after repeated warnings to leave premises.) These cases are distinguished from the instant case in that they did not involve a surreptitious breaking and entering into a secured facility for the purpose of removing valuable items. Hagan argues that his actions were a defiant trespass because 18 Pa.C.S. § 3503(b) includes fencing as one of several ways in which a property owner can provide notice to trespassers that they are not welcome.[8] We do not believe that the intent of this provision was to make all intrusions into fenced areas punisha-

---

8. 18 Pa.C.S. § 3503(b) provides in pertinent part:

(b) Defiant trespasser.—

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

\* \* \* \* \* \*

(iii) fencing or other enclosure manifestly designed to exclude intruders.

ble only as a defiant trespass. We believe that the Appellant's actions were more culpable than the non-felonious offense of defiant trespass.

For the above-mentioned reasons we affirm the order of the Superior Court.

PAPADAKOS, J., did not participate in the decision of this case.

FLAHERTY, J., files a dissenting opinion in which ZAPPA-LA, J., joins.

MONTEMURO, J., is sitting by designation.

FLAHERTY, Justice, dissenting.

The issue is whether sufficient evidence supports appellant's conviction of burglary for stealing scrap metal stored in an outdoor fenced lot. As described in the opinion of the court, appellant's offense took place on industrial property in Philadelphia owned by Morris Iron and Steel Company, on which were two vacant burned-out buildings, a railroad track, and a lot partially enclosed by a chain link fence. The buildings had been vacant for months and the company had not carried on any operations at the location during that period. Various types of steel railroad equipment owned by the company were strewn about the fenced lot. A manager of the company had posted "keep out" signs on the fence, parked an old trailer truck against the inside of the gate giving access to the lot, and periodically inspected the property by driving past on the street outside the lot.

The majority concludes that appellant's entry into the fenced lot and gathering the railroad steel into piles satisfy the elements of the grave offense of burglary. I do not agree.

Originally defined as breaking and entering an occupied dwelling during the nighttime with the intent to commit a felony therein, the common law offense of burglary has been expanded by statute so that it now prohibits entering an "occupied structure ... with intent to commit a crime therein." 18 Pa.C.S. § 3502(a). An occupied structure, amazingly,

620

is defined to include any "vehicle or place adapted ... for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S. § 3501.

Although the majority struggles to avoid the absurdity of such a definition, I cannot join in their interpretation. To state that an "occupied structure" may be any unoccupied place which is not a structure, so long as it is adapted for carrying on business therein, completely robs the words "occupied" and "structure" of meaning.

It is a fundamental rule that all provisions of a penal statute are to be strictly construed. 1 Pa.C.S. § 1928(b)(1). If we are to hold that an unoccupied nonstructure is an occupied structure because it is adapted for carrying on business, I would at least require that "carrying on business" involve more than the passive storage of rusting steel outside burned-out industrial buildings. Therefore I respectfully dissent.

ZAPPALA, J., joins in this dissenting opinion.