COMMONWEALTH of Pennsylvania, Appellant,

v.

**Jose Augenstein CHIARI, Appellee.**

Superior Court of Pennsylvania.

Submitted July 26, 1999.

Filed Nov. 15, 1999.

D. Peter Johnson, Dist. Atty., Lewisburg, for Com., appellant.

Hugh A. Benson, Jr., Selinsgrove, for appellee.

Before HUDOCK, J., FORD ELLIOTT, J., and CERCONE, President Judge Emeritus.

CERCONE, President Judge Emeritus:

¶ 1 This is an appeal by the Commonwealth from an order docketed November 20, 1998 which finalized the judgment of sentence entered after a jury convicted Appellee, Jose Augenstein Chiari, of two counts of robbery and associated crimes. *See Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 658 A.2d 395, 397 (1995), *appeal quashed*, 543 Pa. 6, 669 A.2d 877 (1995) (a judgment of sentence becomes final for purposes of appeal when the Trial Court disposes of post-sentencing motions). For the reasons that follow we reinstate the jury's verdict and vacate the judgment of sentence.

¶ 2 The record indicates that on the morning of April 29, 1997, Appellee and his associate Dwight Smith, went to the home of Appellee's estranged wife, C.J. Chiari. On the date in question, Appellee's sister, Wendy Chiari, and her friend Willy Jackson were staying with Mrs. Chiari. Appellee and Dwight Smith forced their way into Mrs. Chiari's home and, at gunpoint, demanded money and drugs as well as Wendy Chiari's car keys and her beeper. During the incident, Willy Jackson was robbed of his jewelry. *See* Trial Court Opinion filed 11/20/98 at 2.

¶ 3 A jury convicted Appellee of two counts of robbery, three counts each of simple assault, and recklessly endangering another person, and one count each of firearms not to be carried without a license

and receiving stolen property. 18 Pa. C.S.A. §§ 3701, 2701, 2705, 6106 and 3925, respectively. Several days after the jury returned its verdict, the Commonwealth filed written notice that it intended to seek imposition of the mandatory minimum sentencing provisions applicable to crimes of violence committed with a firearm. On April 28, 1998, the Trial Court sentenced Appellee to serve four (4) to twenty (20) years of imprisonment for the robbery of Willy Jackson, with a concurrent term of eighteen (18) months to twenty (20) years for the robbery of Wendy Chiari. The Trial Court imposed an aggregate concurrent term of six (6) months to one (1) year on the remaining charges. Appellee filed several timely post-sentence motions. However, the Commonwealth filed a notice of appeal to the Superior Court challenging the Trial Court's refusal to apply the mandatory minimum sentencing provisions of 42 Pa.C.S.A. § 9712. This Court quashed the Commonwealth's appeal as interlocutory on the grounds that it precluded the Trial Court from considering Appellee's post-sentence motions. *See Commonwealth v. Chiari*, Appeal No. 739 Harrisburg 1998 (Order dated July 13, 1998).

¶ 4 Upon remand, the Trial Court heard oral argument on Appellee's claims, including his request for a judgment of acquittal on the charge of robbing Willy Jackson. At this hearing, the Commonwealth orally objected to the Trial Court's refusal to apply the mandatory minimum sentencing provisions applicable to a robbery committed with a firearm. *See* N.T. Post Trial Motions Hearing, 9/30/98, at 13. On the date of the hearing, the Trial Court entered an Amended Sentencing Order correcting certain scrivener's errors in the original order of sentence. Subsequently, on November 19, 1998, the Trial Court ruled on Appellee's motion for acquittal, holding that, as a matter of law, the evidence was insufficient to sustain Appellee's conviction for the robbery of Willy Jackson. On that same date, the Trial court vacated the judgment of sentence imposed for the challenged robbery count, and reaffirmed the sentence imposed on the other counts without making any alterations to the sentencing scheme. *See* Order and Trial Court Opinion docketed November 20, 1998.

¶ 5 Thereafter, on December 17, 1998, the Trial Court conducted a hearing to consider the Commonwealth's claim that the sentence on the remaining robbery count was lower than, and thus outside of, the Sentencing Guidelines. At the hearing, the Commonwealth argued that the Trial Court had imposed sentence outside the Guideline ranges without giving any reasons of record for this departure. *See* N.T. Post–Sentence Hearing, 12/17/98. Citing double jeopardy concerns, the Trial Judge declined to alter the sentence. *Id.* at 15. The next day, December 18, 1998, the Commonwealth filed a timely notice of appeal from the sentencing order of November 20, 1998. The Commonwealth presents two claims for our consideration:

1. Did the lower Court abuse its discretion when it acquitted the defendant of robbery where the jury found the defendant guilty thereof as the accomplice of a co-felon who committed robbery of one of their three victims because the defendant was not present when the co-felon committed said act?

2. Did the lower Court improperly fail to apply the mandatory sentencing requirements of 42 Pa.C.S. § 9712 where the Commonwealth proved beyond a reasonable doubt that the unarmed defendant was the accomplice of a co-felon who, to the clear knowledge of the defendant, visibly possessed and used a handgun to rob two separate victims?

Commonwealth's Brief at 3.

¶ 6 As an initial matter, we note that the Commonwealth's first issue is properly before us. Our law holds that the government may appeal from a trial court's order finding the evidence insuffi-

cient to sustain a jury's verdict of guilty and entering a judgment of acquittal in favor of a defendant. *Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90, 94 (1995) (*en banc*), *aff'd*, 546 Pa. 139, 683 A.2d 289 (1996). An order by a reviewing court reversing a judgment of acquittal and reinstating a jury verdict does not offend the proscription against double jeopardy because such a procedure does not require a second trial. *Id.* Thus, we may proceed to analyze the propriety of the Trial Court's order granting Appellee an acquittal on the charge that he robbed Willy Jackson.

¶ 7 When ruling upon a post-verdict motion for judgment of acquittal, "a trial court is limited to determining the presence or absence of that quantum of evidence necessary to establish the elements of the crime." *Id.*, 660 A.2d at 94–95.

To determine the legal sufficiency of evidence supporting a jury's verdict of guilty, the Superior Court must:

view the evidence in the light most favorable to the Commonwealth, which has won the verdict, and draw all reasonable inferences in its favor. We then determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. It is the function of the jury to pass upon the credibility of the witnesses and to determine the weight to be accorded the evidence produced. The jury is free to believe all, part or none of the evidence introduced at trial. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the jury unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.

*Id.* at 95 (quotations and citations omitted). *Accord Commonwealth v. Hagan*, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995).

¶ 8 The Commonwealth proceeded on a theory of accomplice liability with regard to the charge that Appellee robbed Willy Jackson.

It is well established that an accomplice is equally criminally liable for the acts of another if he acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense.

*Commonwealth v. Spotz*, 552 Pa. 499, 511, 716 A.2d 580, 585 (1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999). The shared criminal intent necessary to sustain a conviction predicated on accomplice liability may be inferred from a defendant's words and conduct, as well as from the attendant circumstances. *Id.* at 511, 716 A.2d at 586.

¶ 9 Testimony adduced at trial indicates that late on the evening of April 28, 1997, Appellee and his cohort Dwight Smith discussed their mutual desire to harm Appellee's sister Wendy and her paramour Willy Jackson. *See* N.T. Trial, 3/10/98, at 65–75 (testimony of Susan Rivera). In the early morning hours of April 29th, Appellee and Smith armed themselves with a stolen 9 mm handgun and drove to Mrs. Chiari's home, where Wendy was staying. *Id.* at 99–103 (testimony of Charles W. Hulsizer) and 105–115 (testimony of Raymond C. Michaud, Jr.). When they reached Mrs. Chiari's home, Appellee forced his way in the door and Smith followed. *Id.* at 25 (testimony of C.J. Chiari). Dwight Smith wore a sheer black nylon stocking over his face and immediately began demanding "where's the shit?," which Mrs. Chiari understood to mean that Smith wanted drugs and money. *Id.* at 29, 43, 209. Shortly thereafter, Smith pulled a gun out of a pouch in his sweatshirt. *Id.* at 31, 53. Appellee and Smith demanded Wendy's beeper and her car keys. *Id.* Both men kept saying

"Where's the shit?" *Id.* Mrs. Chiari testified unequivocally that Appellee was present in her living-room while Smith brandished his weapon and demanded that Willy Jackson hand over his jewelry. *Id.* at 36, 53–54. After Smith took the jewelry from Mr. Jackson, Appellee forced Mrs. Chiari upstairs to retrieve Wendy's beeper and car keys. *Id.* at 32, 36.

¶ 10 Appellee's sister Wendy also testified at his trial. However, she was unable to recall any of the events that led to her brother's arrest. Consequently, Wendy's testimony from Appellee's preliminary hearing was read into the record. *See* N.T. Trial, 3/10/98, at 185–211. The testimony thus adduced corroborates that of the other witnesses and indicates that Dwight Smith pulled out his gun shortly after entering Mrs. Chiari's home. *Id.* at 188, 191. He pointed the weapon at Mrs. Chiari and informed her that he was willing to shoot her. *Id.* Wendy stated that she was present when Smith made this threat, and that Appellee was standing directly beside her at the time Smith pointed the gun at C.J. Chiari. *Id.* at 188, 190.

¶ 11 Smith brandished his weapon as Appellee forced Willy Jackson to come downstairs and go into the living-room with C.J. Chiari and Wendy. *Id.* at 191–192. Appellee was present when Smith pointed the gun at Mr. Jackson. *Id.* at 191. When all of the victims were gathered together in the living-room, Smith pointed the weapon at them and Appellee demanded Wendy's car keys and her beep-

er. *Id.* at 192–193. Wendy stated that she was so terrified of the gun that she couldn't move to look for the items. *Id.* at 209. Appellee therefore forced his wife to go upstairs and to get the keys and beeper. *Id.* at 196. As C.J. and Appellee left the living-room, Smith demanded Willy Jackson's jewelry. *Id.* When Mr. Jackson was slow to comply, Smith again leveled the gun at the victim. *Id.* at 193. After Appellee retrieved the car keys from upstairs, he went outside. *Id.* at 193, 202.

■ ¶ 12 We find that the evidence clearly establishes the fact that Appellee entered into an agreement with Dwight Smith to invade his wife's home and terrorize and rob the inhabitants. The evidence shows that Appellee was present when his accomplice visibly possessed and used a firearm to threaten all of the victims, including Willy Jackson. Moreover, evidence was presented, which the jury chose to believe, that Appellee was present when Smith made his initial demand for Willy Jackson's jewelry.

■ ¶ 13 We are cognizant of the fact that the testimony of Appellee's wife and that of his sister contained certain inconsistencies.[1] However, it is well-settled that it is within the jury's purview to resolve the problems presented by inconsistencies in a witness' testimony. *Commonwealth v. Mikell*, 556 Pa. 509, 516, 729 A.2d 566, 569 (1999). The Superior Court may not reweigh the evidence and substitute our judgment for that of the factfinder. *Commonwealth v. Vetrini*, 734 A.2d 404, 407 (Pa.Super.1999). Nor may the

---

1. For example, Mrs. Chiari provided contradictory testimony concerning the point in time at which Smith pulled out his gun. At first she indicated that he displayed the weapon immediately upon entering the house. Later, she stated that she thought she saw the gun only after Appellee brought her back downstairs. Later still, she indicated that she was confused, and that she was "having kind of a hard time with time frames" and that she could not precisely remember the sequence in which events occurred. *See* N.T. Trial, 25–32. However, after she reviewed the statement she gave to the police immediately after the

events in question, Mrs. Chiari was unequivocal that Smith displayed the gun before her husband forced her to go upstairs with him. *Id.* at 36. Wendy Chiari had difficulty remembering whether her brother was present in the living-room when Smith robbed Willy Jackson of his jewelry. At one point, she stated that Smith demanded the jewelry just as Appellee left the room to go upstairs. *Id.* at 196. Later, however, she testified that she thought Appellee might have been outside the house during the actual theft of the jewelry. *Id.* at 202.

trial court alter a verdict based on a post-trial redetermination of the credibility of the evidence. *Commonwealth v. Bigelow*, 416 Pa.Super. 449, 611 A.2d 301, 303 (1992). If a jury reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict. *Commonwealth v. Wood*, 432 Pa.Super. 183, 637 A.2d 1335, 1343 (1994).

¶ 14 As previously discussed, we are required by the applicable standard of review to interpret the above evidence in the light most favorable to the Commonwealth, the verdict winner in this case. Thus, we must accept the jury's resolution of credibility issues. *Vetrini* and *Wood*, *supra*. Because we agree with the Commonwealth that the evidence adduced in this case was sufficient to sustain the conviction against Appellee for the robbery of Willy Jackson, we are constrained to reverse the Trial Court's grant of the motion for acquittal. We therefore reinstate the jury's verdict finding Appellee guilty of robbing Willy Jackson.

¶ 15 The Commonwealth next challenges the propriety of the Trial Court's refusal to apply the mandatory minimum sentence, pursuant to section 9712 of the Sentencing Code, for a crime of violence (robbery) committed by a perpetrator in visible possession of a firearm.[2] This issue is properly before us as subsection 9712(d) affords the Commonwealth the right of appeal if a sentencing court refuses to impose a mandatory minimum sentence. *See* 42 Pa.C.S.A. § 9712(d) (Sentences for Offenses Committed with Firearms). The decision of whether to invoke the provisions requiring imposition of a mandatory minimum sentence rests solely within the discretion of the Commonwealth. *Commonwealth v. Glass*, 718 A.2d 804, 815 (Pa.Super.1998), *appeal granted in part*, 556 Pa. 62, 726 A.2d 1041

(1999); *Commonwealth v. Daniels*, 440 Pa.Super. 615, 656 A.2d 539, 542 (1995); *Commonwealth v. Biddle*, 411 Pa.Super. 210, 601 A.2d 313, 318 (1991). The Commonwealth is required to provide notice to the defendant after conviction but before sentencing of its intent to request a mandatory minimum sentence. 42 Pa.C.S.A. § 9712(b). In the present case, the Commonwealth properly complied with the notice requirement with regard to both of Appellee's robbery convictions. *See* Notice of Commonwealth's Intent to Seek Mandatory Sentencing, filed 3/18/98.

¶ 16 A sentencing court has no discretion in refusing to apply the mandatory minimum sentence provisions of the Sentencing Code. *Commonwealth v. Morgan*, 425 Pa.Super. 344, 625 A.2d 80, 85 (1993), *appeal denied*, 535 Pa. 667, 634 A.2d 1115 (1993). Furthermore, the mandatory minimum sentencing provisions of section 9712 apply to accomplices who did not visibly possess a firearm during the commission of the crime or crimes in question. *Id.* at 84. Pennsylvania law is clear that a sentencing court **must** apply the provisions of section 9712 to an unarmed accomplice who had knowledge that his co-felon visibly possessed a firearm during the commission of the joint crimes. *Commonwealth v. Matos*, 382 Pa.Super. 401, 555 A.2d 901, 902 (1989), *appeal denied*, 525 Pa. 597, 575 A.2d 563 (1990); *Commonwealth v. Williams*, 353 Pa.Super. 312, 509 A.2d 1292, 1294–1295 (1986).

¶ 17 Contrary to the Trial Court's ruling in the present case, resentencing a defendant pursuant to a mandatory minimum sentencing statute does not violate constitutional prohibitions against double jeopardy. *Commonwealth v. Gonzales*, 350 Pa.Super. 373, 504 A.2d 886, 890 (1986), *appeal dismissed*, 521 Pa. 538, 558 A.2d 529 (1988). A defendant must have a "legitimate expectation of finality" before

---

**2.** Robbery is specifically enumerated as a crime of violence to which the mandatory sentencing provisions of section 9712 apply.

*See* 42 Pa.C.S.A. § 9712(a) (applying definition of "crime of violence" found at subsection 9714(g) of the Sentencing Code).

double jeopardy protections apply. *Commonwealth v. Postell*, 693 A.2d 612, 615 (Pa.Super.1997), *appeal denied*, 550 Pa. 718 706 A.2d 1212 (1998). However, a defendant has no legitimate expectation of finality if a statutory provision exists which permits the Commonwealth to challenge the sentence imposed. *Id.* at 615–615 and n. 5; *Gonzales*, 504 A.2d at 890. *Compare U.S. v. DiFrancesco*, 449 U.S. 117, 139, 101 S.Ct. 426, 438, 66 L.Ed.2d 328 (1980) (a defendant has no reasonable expectation of finality in his sentence when Congress has specifically provided that the sentence is subject to appeal by the prosecution). *See also Commonwealth v. Kunish*, 529 Pa. 206, 214, 602 A.2d 849, 853 (1992) (a criminal defendant is charged with knowledge of all applicable statutory provisions). As previously noted, the mandatory minimum sentencing provision at issue in this case explicitly provides for the possibility of a Commonwealth appeal.

¶ 18 The applicability of section 9712 must be determined at the time of sentencing. 42 Pa.C.S.A. § 9712(b). At the sentencing hearing, the trial court must consider the evidence adduced at trial, and must provide both the Commonwealth and the defendant an opportunity to present any necessary additional evidence. *Id.*[3] After a full hearing, the trial court must then determine, by a preponderance of the evidence, whether section 9712 applies to the case. *Id.* If the evidence supports imposition of the mandatory minimum sentence, the trial court has no authority to impose any lesser sentence than that which is provided under section 9712(a). *Id.*, § 9712(c). In the present case, the applicable minimum term for a robbery committed with a firearm is five (5) years. *See* 42 Pa.C.S.A. § 9712(a).

■ ¶ 19 We have already reviewed the quantum of evidence presented at Appellee's trial. We have no hesitation in finding that the Commonwealth demonstrated, by a preponderance of the evidence, that Appellee's co-felon visibly possessed a firearm with which he terrorized the three victims in this case. The evidence is clear that Appellee knew Dwight Smith possessed the firearm and also knew that Smith used the weapon to threaten the victims and force them to comply with his demands and those made by Appellee. Furthermore, we find that the attendant circumstances of this case indicate that Appellee and Smith fully intended to rob the victims, and that Smith used his weapon to force the victims to hand over their property. The question of whether Appellee was in the room or not in the room when Smith actually stripped Mr. Jackson of his jewelry is simply irrelevant to the question of whether Appellee and Smith planned the robberies and employed a firearm to complete them. Under the totality of the circumstances presented here, we find that the Trial Court erred in refusing to apply the mandatory minimum sentencing provisions to both counts of robbery, as required under section 9712 of the Sentencing Code. In light of the foregoing analysis, we must reverse the judgment of sentence and remand so that the Trial Court may apply the provisions of section 9712 in a sentencing scheme that is fully consistent with all of the provisions of the Sentencing Code, the Sentencing Guidelines, and the information contained in the pre-sentence report filed in this case.

¶ 20 The order of November 20, 1998 granting judgment of acquittal is vacated and the jury verdict is reinstated. Judgment of sentence reversed. Case remanded for resentencing in a manner consistent with this Opinion. Superior Court jurisdiction relinquished.

---

3. The certified record demonstrates that the Trial Court afforded Appellee and the Commonwealth the appropriate opportunity to be heard on these matters.