J-S13037-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RYDELL BENTON | : | |
| | : | |
| Appellant | : | No. 1370 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 22, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000170-2024

BEFORE: PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED MAY 19, 2026**

Appellant, Rydell Benton, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for burglary[1] and related offenses. We affirm.

The relevant facts and procedural history of this appeal are as follows. On December 24, 2023, at approximately 8:55 a.m., Appellant entered a Pep Boys auto parts and service shop on North Broad Street in Philadelphia. Appellant approached a store employee, Paula Suarez, and asked about the purchase and installation of new tires. Ms. Suarez, who was assisting another customer, confirmed that the store offered tire sales and installation. Appellant then approached the tire storage area. This section of the store was

_____

[1] 18 Pa.C.S.A. § 3502(a)(3).

separated from the customer showroom by a poster display. Appellant moved the poster and went into the tire storage area. Ms. Suarez informed Appellant that customers were not allowed to enter the tire storage area, but Appellant ignored her command. Appellant grabbed two tires and began to exit the store.

Ms. Suarez attempted to stop Appellant by holding onto one of the tires. Appellant then brandished a firearm and told Ms. Suarez, "Bitch, you better let go and go back before I shoot you." (N.T. Trial, 10/30/24, at 10). Ms. Suarez relented, and Appellant exited the store. Nevertheless, Ms. Suarez used her cell phone to photograph Appellant as he loaded the tires into his vehicle and drove away. Ms. Suarez also called 911 to report the incident. The Commonwealth subsequently charged Appellant with burglary and related offenses.

Appellant proceeded to a bench trial on October 30, 2024. At the conclusion of trial, the court convicted Appellant of burglary and other offenses. On January 22, 2025, the court sentenced Appellant to an aggregate term of seven (7) to fourteen (14) years' imprisonment. Appellant timely filed a motion for reconsideration of sentence on January 29, 2025. On May 30, 2025, the court entered an order indicating that Appellant's motion was denied by operation of law.

Appellant timely filed a notice of appeal on June 2, 2025. On June 10, 2025, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise

statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on June 18, 2025.

Appellant now raises one issue for this Court's review:

> Was not the evidence insufficient as a matter of law to sustain a conviction for burglary, as the Pep Boys, an autobody business, that Appellant entered was open to the public, and the Commonwealth failed to prove beyond a reasonable doubt that the area where the tires were kept, the former parts' department, was a separately secured structure within the Pep Boys and not actually open to the public?

(Appellant's Brief at 1).

On appeal, Appellant contends this Court must determine whether the tire storage area at Pep Boys is "a separate, distinct and secured portion of the store from the clearly open-to-the-public business in the front of the store…." (*Id.* at 10). Appellant maintains that "a reasonable customer looking for tires" would not "think that they could not go in the area where the tires were kept to actually shop for tires…." (*Id.* at 8). Appellant acknowledges the presence of the poster that separated the tire storage area from the rest of the store, but he insists that "[t]here was nothing to suggest to [Appellant] that he could not go behind a flimsy, moveable poster." (*Id.* at 12). Appellant argues that "[t]here was no door, no lock, no 'keep out, employees only' sign." (*Id.* at 12-13). Absent more, Appellant asserts that the Commonwealth did not prove the tire storage area "was not open to the public as part of the retail establishment." (*Id.* at 14). Appellant concludes that the Commonwealth presented insufficient evidence to support his burglary conviction, which this

Court must reverse. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines burglary, in relevant part, as follows:

**§ 3502. Burglary**

**(a)** **Offense defined.**—A person commits the offense

of burglary if, with the intent to commit a crime therein, the person:

* * *

(3)     enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense any person is present[.]

18 Pa.C.S.A. § 3502(a)(3). Regarding the location where a business stores its goods, our Supreme Court has determined:

[T]he very act of storage is an activity that furthers the purpose of a business. Thus, any secured facility where goods are stored is a place adapted for the carrying on a business and, therefore, an occupied structure for the purposes of the … burglary statutes.

*Commonwealth v. Hagan*, 539 Pa. 609, 614, 654 A.2d 541, 544 (1995).[2]

Instantly, the trial court determined that sufficient evidence supported the burglary conviction:

_____

[2] Appellant observes that the trial court opinion referenced *Hagan*. (*See* Trial Court Opinion, filed 8/4/25, at 16). Appellant insists, however, that *Hagan* is distinguishable:

In *Hagan*, the Pennsylvania Supreme Court was asked to determine if a storage lot is the same as a storage building, *i.e.* a structure, for purposes of the burglary statute. In holding that the lot was a "structure" within the meaning of the statute, the Court held, "a fenced and secured storage lot is a 'place adapted for carrying on business.'"

(Appellant's Brief at 10). While we agree with Appellant that the facts in *Hagan* are not identical to those at issue here, we find *Hagan* instructive due to our Supreme Court's recognition of the nexus between the burglary statute and the need to protect a business's secured location for the storage of its goods.

- 5 -

This court heard uncontroverted testimony from [Ms. Suarez] that the tires were stored in a section of the Pep Boys store secured behind a poster. Though [Ms. Suarez] could not recall if there was additional signage indicating that the storage area was not accessible, she provided credible testimony that the poster was placed in a manner which required it to be moved out of the way before a member of the public could access the tires. Additionally, [Ms. Suarez] provided uncontroverted testimony that she told Appellant that he could not access the storage area after he moved the poster aside.

\* \* \*

A large poster … prevented the public from being able to freely enter the tire storage area. The only way the tires could be accessed was by removing the stand or by passing the cash register. While the stored tires were not secured by a door or a lock, a reasonable person would not have believed that the tires were accessible to the public. As the tire storage area was a secured facility to store goods, it was a place for carrying on business and was therefore an occupied structure. The tires were not stored in an area of Pep Boys that was open to the public.

(Trial Court Opinion at 16-17) (record citations omitted). Our review of the record confirms this analysis.

We emphasize Ms. Suarez's testimony that the store utilized the poster to prevent customers from entering the tire storage area. Specifically, the Commonwealth played surveillance videos depicting the store from multiple angles,[3] and Ms. Suarez provided the following narration to explain the store's

_____

[3] The certified record on appeal does not include the surveillance videos, which the court admitted as Exhibits 1-4 from the Commonwealth. (*See* N.T. Trial at 13). To the extent that Appellant's brief contains screenshots from the videos, we believe these images support the testimony from Ms. Suarez

*(Footnote Continued Next Page)*

- 6 -

layout: "That right there is a poster that they use to block off the parts department…. And they don't—beyond that point, can't nobody go back there but us." (N.T. Trial at 14). Ms. Suarez also described how Appellant entered the tire storage area, despite her instructions to the contrary:

> [T]here's like a little poster, like from Pep Boys for parts and service. He looked … in to see what was on the other side, he went outside, came back in, moved the poster, went to the back. I followed him, and I said, "Sir, you cannot go back there." He ignored me, he continued to walk towards the tires.

(*Id.* at 10).

Although Appellant now argues that something more than the poster was required to create a "separately secured" section of the store, the relevant portion of the burglary statute includes no such requirement. Here, the placement of the poster constituted an adequate attempt by the merchant to secure the tire storage area. *See* 18 Pa.C.S.A. § 3502(a)(3); *Hagan, supra*. Under the circumstances of this case, Appellant's act of moving the poster was the functional equivalent of circumventing a door, lock, or fence. Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's burglary conviction. *See Sebolka, supra*. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

_____

because the oversized "poster" appears deliberately stationed to prevent customers from seeing, let alone accessing, the tire storage area. (*See* Appellant's Brief at 4-5).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/19/2026