UNITED STATES of America, Appellee,

v.

Teresa Ann SCOTT, Appellant.

No. 81–2284.

United States Court of Appeals,
Eighth Circuit.

Submitted April 15, 1982.

Argued July 1, 1982.

Michael W. Walker, Martin, Henry & Walker, Kansas City, Mo., for appellant.

Robert G. Ulrich, U. S. Atty., Thomas M. Larson, First Asst. U. S. Atty., Richard J. Nolan, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, STEPHENSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

McMILLIAN, Circuit Judge.

Teresa Ann Scott appeals her conviction of three counts of making inconsistent material declarations while under oath in violation of 18 U.S.C. § 1623 entered in the District Court [1] for the Western District of Missouri after a jury trial. For reversal Scott argues that (1) the evidence was insufficient to support her conviction; (2) the district court erred in refusing to give an entrapment instruction; (3) the indictment and jury instructions did not list all the elements of the offense; and (4) the three

1. The Honorable Scott O. Wright, United States District Judge for the Western District of Missouri.

count indictment was multiplicitous.[2] For the reasons discussed below, we affirm the district court.

On July 20, 1980, FBI Agent Robert Callahan went to Scott's residence to question her about the November 1979 robbery of the Blue Valley Federal Savings & Loan (Blue Valley) and the January 1980 robbery of the Rockhill Federal Savings & Loan (Rockhill).[3] Scott was not at home so Callahan left a message for her to contact him. The following Monday, July 14, Scott voluntarily went to the FBI office located in Kansas City, Missouri, and met with Agents Callahan and Parnell Miles. Callahan told Scott that he had a government witness who was going to testify in such a way as to implicate Scott in numerous crimes if she did not cooperate in the FBI's investigation of the robberies. Scott agreed and examined three bank surveillance photographs taken during the two robberies. Scott identified Bobby McNeal, her present boyfriend, and George Brown, a former boyfriend, as the individuals in the Blue Valley photograph and McNeal and Olie Ealom, her half-brother, as the individuals in the Rockhill photographs.

At some point Scott made statements implicating herself as an accessory to the robberies. An understanding was reached whereby Scott would not be indicted in exchange for her cooperation with the government. On December 30, 1980, Scott was deposed in connection with the government's case against McNeal for the Blue Valley robbery. She was shown the same bank surveillance photographs, exhibits C, D, and E, and again identified the individuals in exhibit C, the Blue Valley robbery, as Brown and McNeal and the individuals in exhibit E, the Rockhill robbery, as Ealom and McNeal. The face of the person identified as McNeal was not identifiable in the photographs. However, Scott stated that the striped coat worn by that person during both robberies belonged to her and that she had lent it to McNeal on the morning of the Blue Valley robbery. In addition, exhibit D was a front shot of that person and showed that he was made up to appear as a woman during the Blue Valley robbery. Scott stated that she had applied McNeal's makeup on the morning of the Blue Valley robbery.

On January 20, 1981, Scott was called to testify at McNeal's trial. On direct examination she was again shown exhibits C, D, and E. However, she testified that she could not identify the striped coat worn by one of the individuals in exhibit C, that she could not identify the individual in exhibit D whom she had previously identified as McNeal, and that she could not identify the individuals in exhibit E whom she had previously identified as McNeal and Ealom. The jury found McNeal not guilty and shortly thereafter the government dismissed its case against McNeal and Ealom for the Rockhill robbery.

The government subsequently charged Scott with three counts of making irreconcilably contradictory declarations under oath in violation of 18 U.S.C. § 1623.[4] At her trial Scott testified that her deposition testimony was false and that she had recanted at McNeal's trial. Scott also testified that the reason she lied during the deposition was Callahan's threat that she could be sent to prison and lose custody of her children if she did not cooperate with the investigation. Scott further testified that before she made the July 20, 1980,

2. Scott was sentenced to one year and one day on count one, imposition of sentence on counts two and three was suspended and Scott was placed on probation for a period of two years, the probation to be consecutive to sentence imposed on count one.

3. George Brown, who pled guilty to the Blue Valley robbery, had told the FBI that Scott had knowledge of the robberies and the striped coat worn by one of the perpetrators in both robberies.

4. 18 U.S.C. § 1623 provides in relevant part:

(a) Whoever under oath ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declarations shall be fined not more than $10,000 or imprisoned not more than five years, or both.

statement to Callahan he had told her that he already knew the identities of the individuals in the bank surveillance photographs and also knew that the striped coat belonged to Scott. On cross-examination Scott admitted that she had visited McNeal at the Wyandotte County Jail on January 14, 1981, signed the deposition on January 15, and visited McNeal again on January 16. The jury found Scott guilty on all three counts.

On appeal Scott first argues that her prosecution was barred by the "recant" provision of 18 U.S.C. § 1623(d) which provides:

> Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

Alternatively, Scott argues that, in light of this section, there was insufficient evidence to support her conviction. We reject these arguments.

■ Scott did not raise the recantation argument by pretrial motion.[5] Rather, she attempted to convince the jury that her deposition testimony was false and that she had recanted at McNeal's trial. The recantation section of the statute was included in the jury instructions and referred to in her counsel's closing argument. Because Scott chose to submit the issue to the jury the question before us is whether there is substantial evidence, taking the view most favorable to the government, to support the verdict. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Viewed in this light, the evidence shows that the government agreed not to indict Scott as an accomplice in the robberies in exchange for her testimony at McNeal's trial, that her deposition testimony was consistent with earlier statements made to the FBI and finally, that she was romantically involved with McNeal and visited him the day before and after signing the deposition. The jury could reasonably have found from the evidence that Scott was truthful in the deposition and lied at McNeal's trial.[6]

Scott next argues that the district court erred in refusing her request for an entrapment instruction. Scott asserts that her testimony that Callahan had told her that he knew the identity of the individuals in the bank surveillance photographs and that Scott owned the striped coat before she made the original statement together with his alleged threat to send her to jail raised factual issues of entrapment which should have been decided by the jury. There is no merit to this argument.

■ "[A] defendant in a criminal case is entitled to a 'theory of defense' or a 'position' instruction if he makes a timely request for such an instruction, if the request is supported by evidence and if it sets out a correct declaration of law." United States v. Manning, 618 F.2d 45, 47–48 (8th Cir. 1980) (citations omitted). In the present case there is nothing in the record suggesting any prosecutorial misconduct which would require a finding of entrapment. Scott, while represented by counsel, agreed to be deposed and testify at McNeal's trial in exchange for the government's assurance that it would not indict her as an accessory. The government did not solicit Scott to commit perjury at the deposition. In fact, it appears reasonable to assume that the government believed and relied on the deposition in preparing its case against McNeal. Assuming arguendo that Scott's

---

5. Scott did raise the recantation issue in a motion for a new trial. That motion was denied. Scott does not allege that the district court erred in denying the motion in this appeal.

6. The government raised the argument that, assuming Scott's trial testimony was an effort to correct her deposition testimony, the correction came too late because the deposition testimony had had a substantial effect in McNeal's trial. We do not have the record of McNeal's trial before us and we need not reach this argument.

testimony at McNeal's trial was true, the most that can be said about her theory is that a situation was created where perjury appeared expedient. There being no evidence of entrapment, the district court properly refused to give the instruction.

Scott next argues that neither the indictment nor the jury instruction [7] defining the elements of the offense included all the essential elements of the offense. Specifically, Scott asserts that the ancillary nature of her deposition had to be alleged in the indictment and that the instruction should have required the jury to make a finding that the deposition was an ancillary proceeding. There is no merit to this argument.

 Title 18 U.S.C. § 1623 applies to inconsistent declarations made "in any proceeding before or ancillary to any court or grand jury of the United States." The term "ancillary" proceedings has been construed to include depositions and exclude "statements given in less formal contexts than depositions." *Dunn v. United States,* 442 U.S. 100, 111, 99 S.Ct. 2190, 2196, 60 L.Ed.2d 743 (1979). Therefore, the terms "deposition" and "ancillary proceeding" are synonymous under the statute and requiring the indictment to specifically allege the ancillary nature of the deposition or requiring the jury to find that a deposition is an ancillary proceeding would be redundant.

Scott's next argument simply asserts that the three count indictment was multiplicitous because the legislative intent as to the appropriate unit of prosecution under 18 U.S.C. § 1623 is unclear and that any doubt should be resolved against turning a single transaction into multiple offenses. Scott offers no support for this argument and we conclude that it is without merit.

Separate and distinct false declarations under 18 U.S.C. § 1623 which require different factual proof of falsity may properly be charged in separate counts even though they are all related and arise out of the same transaction. *See United States v. De La Torre,* 634 F.2d 792 (5th Cir. 1981); *United States v. Williams,* 552 F.2d 226 (8th Cir. 1977); *United States v. Doulin,* 538 F.2d 466 (2d Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).

In the present case the three counts relate to two separate robberies and the identities of two individuals.[8] Different evidence was required to establish that the various responses were false. We conclude that the indictment is not multiplicitous.

The judgment of the district court is affirmed.

---

**7.** Instruction No. 10 provides:

The following essential elements must be proved in each count of the indictment in order to establish the offense of making a false declaration as charged in the indictment.

First: That Teresa Ann Scott gave testimony under oath in court and by deposition; and

Second: That Teresa Ann Scott made two or more inconsistent statements under oath; and

Third: That said statements are inconsistent to the degree that one of them is necessarily false; and

Fourth: That said statements were made knowingly.

We note the omission of the materiality element in the instruction. However, Scott did not raise this omission at trial nor does she argue it on appeal. Therefore, the error has not been preserved for appeal and we conclude that the plain error rule does not apply.

**8.** Scott's identification of Brown was not pursued at McNeal's trial because Brown had previously pled guilty to the Blue Valley robbery.