939 A.2d 877

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Duane KING, Appellee.**

Supreme Court of Pennsylvania.

Argued April 3, 2006.

Resubmitted Sept. 25, 2007.

Decided Dec. 28, 2007.

686

Jonathan Michael Levy, Lynne M. Abraham, Ronald Eisenberg, Hugh J. Burns, Jr., Philadelphia Dist. Attorney's Office, for the Com. of PA, appellant.

Sheryl Stern Chernoff, for Duane King, appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## *OPINION*

Chief Justice CAPPY.*

The question presented in this appeal is the proper interpretation of the perjury statute, 18 Pa.C.S. § 4902, in a case involving multiple falsehoods made by the same witness during a single judicial proceeding. The Superior Court concluded that the trial court erred by failing to conduct an individualized analysis of the alleged perjurious statements. Accordingly, the court vacated the judgment of sentence. For the reasons stated herein, we affirm the order of the Superior Court albeit on different grounds.

The facts underlying the instant matter are straightforward. In 1994, Appellee Duane King entered a negotiated plea of guilty to third-degree murder, 18 Pa.C.S. § 2502(c), robbery, 18 Pa.C.S. § 3701, and conspiracy, 18 Pa.C.S. § 903, in connection with the 1993 murder of Darryl Crawford. As part of the

* This matter was reassigned to this Justice.

plea agreement, Appellee agreed to testify against his co-defendants, Kyle Dickerson and Shawn Harris. Appellee testified at his co-defendants' joint trial in 1996 and both men were convicted of second-degree murder. During Appellee's plea sentencing, the prosecutor made no recommendation as to the term of his sentence, but noted that Appellee's testimony had resulted in the conviction of his co-defendants. The court sentenced Appellee to five and one-half to thirty years in prison for his role in the murder.

After serving his minimum sentence, Appellee was denied parole. On June 7, 2000, Appellee filed a PCRA petition in which he indicated that his testimony at his co-defendants' trial was false.[1] On March 12, 2001, Appellee signed an affidavit in which he swore that his trial testimony against Dickerson was false. Dickerson, in turn, attached Appellee's affidavit in support of his own PCRA petition, claiming after-discovered evidence, and called Appellee as a witness at his PCRA evidentiary hearing on July 12, 2002. Under oath, Appellee recanted his sworn testimony from the 1996 trial.

In addition to testifying that he had lied at the 1996 trial, Appellee tried to explain his prior testimony by claiming that he had been coerced into lying by the police and the prosecution. To bolster his claim of coercion, Appellee made six specific factual representations, which the Commonwealth later used in charging Appellee with six separate counts of perjury. The six alleged perjurious statements made during Dickerson's PCRA hearing were as follows: 1) Appellee claimed that he was arrested before, not after, providing a statement to the police detectives; 2) Appellee claimed that the detectives told him to falsely accuse Ivan Bingham in Crawford's murder; 3) Appellee claimed that the detectives told him that they would lift an open charge of murder against him in exchange for his false accusation against Ivan Bingham; 4) Appellee claimed that the detectives told him to falsely implicate himself in the Crawford murder (in order to bolster his testimony regarding Bingham); 5) Appellee

---

1. In his Brief to this court, Appellee states that his PCRA petition was summarily denied without a hearing.

claimed that the detectives promised him that he would receive no more than five years in prison for the Crawford murder; and 6) Appellee claimed that Assistant District Attorney Fisk told him that she would dispose of his open homicide case and limit his sentence on the Crawford murder to five years in prison. In response, the Commonwealth presented evidence that each of these claims was false, as was Appellee's overall recantation testimony. The *Dickerson* PCRA court rejected Appellee's recantation testimony and denied Dickerson's request for PCRA relief.

Following Dickerson's PCRA hearing, the police arrested Appellee and charged him with perjury and false swearing, 18 Pa.C.S. § 4903. After a jury trial, Appellee was convicted of one count of false swearing and six counts of perjury—one count for each of the six falsehoods related previously. The trial court sentenced Appellee to three to six years on each perjury conviction ordered to run consecutively, resulting in an aggregate term of eighteen to thirty-six years in prison.

Appellee filed an appeal and the trial court filed an opinion in support of its sentence. Regarding Appellee's claim that the evidence did not support six separate counts of perjury, the trial court explained that the statements were material to the proceeding in which they were made because they cast doubt on the credibility of the police and the district attorney's office.

The Superior Court vacated the judgment of sentence in a memorandum opinion. Relevant to the instant appeal, the court explained that the Commonwealth was required to show that each of the six statements "that it parsed out of the PCRA transcript, could have, standing alone, affected the outcome of the proceeding." Superior Court slip opinion, 3/8/2005, at 5. The trial court failed to provide such an individualized analysis of the alleged perjurious statements and the Commonwealth "essentially concede[d] that the six independent statements had only incremental value." *Id.* at 6. Accordingly, the court concluded that the record only supported a single count of perjury when the six falsehoods were considered in the unified context in which they were given.

Judge Olszewski filed a concurring and dissenting opinion, noting that he would uphold all six of Appellee's perjury convictions. The proper inquiry concerning the materiality of a false statement, according to Judge Olszewski, was whether the statement had the ability to affect the fact finder and the outcome of the proceeding, not whether the statement actually influences the result of the proceeding.

The Commonwealth appealed the Superior Court's order and this court granted allowance of appeal to explore the materiality requirement in the perjury statute.

■ Preliminary, this matter involves a question of interpretation of the perjury statute. As such it is a question of law. Our scope of review is plenary, and our standard of review is *de novo*. *Freundt v. Penn. DOT*, 584 Pa. 283, 883 A.2d 503, 506 (2005).

The Statutory Construction Act guides us in our inquiry and instructs us, in relevant part that, "the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.'" 1 Pa.C.S. § 1921. A court should resort to other considerations, such as the General Assembly's purpose in enacting a statute, only when the words of a statute are ambiguous. 1 Pa.C.S. § 1921(c).

■ The Act also provides that "[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage"; and that "technical words and phrases and such others as have acquired a peculiar and appropriate meaning ... shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). Further, if the General Assembly defines words that are used in a statute, those definitions are binding. *Commonwealth v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989). Finally, because we are construing a criminal statute,

we must keep in mind that penal provisions are to be strictly construed. 1 Pa.C.S. § 1928.

> The crime of perjury is statutorily defined as follows:
> (a) Offense defined.—A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

18 Pa.C.S. § 4902(a). The Legislature has defined "statement" for purposes of perjury as follows:

> As used in this chapter, unless a different meaning plainly is required, "statement" means any representation, but includes a representation of opinion, belief or other state of mind only if the representation clearly relates to state of mind apart from or in addition to any facts which are the subject of the representation.

18 Pa.C.S. § 4901. Last, the materiality requirement of the crime is statutorily defined under section 4902 as:

> (b) Materiality.—Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

18 Pa.C.S. § 4902(b).

Taken together, these provisions make clear that in order to constitute the offense of perjury, there must be a false statement, i.e., a representation, which could have affected the course or outcome of the proceeding. In this case, the Commonwealth's theory of the case was that each individual falsehood was a separate statement justifying a separate count of perjury. Thus, the Commonwealth had to prove three items—the individual falsehood was a statement, that statement *by itself* "could have affected the course or outcome of the proceeding," and that Appellee did not believe the statement to be true. 18 Pa.C.S. § 4902(b). There is no conten-

tion regarding Appellee's belief of the falsity of the statements and this court's focus is on the remaining two requirements.

Turning first to the definition of "statement," Section 4901 is clear that while a statement may be comprised of a single fact, it may also be comprised of many facts, which amount to a single representation. In the context of the instant matter, however, we must consider whether multiple, separate falsehoods amount to a single or multiple statements. In *Commonwealth v. Davenport*, 255 Pa.Super. 131, 386 A.2d 543 (1978), the Superior Court had occasion to examine a comparable question. In *Davenport*, the defendant had made similar statements at two different proceedings, and the Commonwealth charged the defendant with two separate counts of perjury. While the situation was not identical to the case at hand, the court's discussion provides some guidance for the instant matter. The court noted, "the use of the phrase 'facts which are the subject of the representation' makes clear that the legislature had in mind that a 'representation' may comprise more than one fact." *Id.* at 550. The court then pointed out that the essential question was whether the "representations" described one event or were so inter-related as to a single subject matter to constitute a single "statement." In support, the *Davenport* court quoted a portion of *State v. Anderson*, 35 Utah 496, 101 P. 385 (1909), a case that addressed when multiple false facts are so interrelated that they constitute only one count: "[T]he several assignments contained in the information consist of certain alleged successive statements made by defendant while testifying as a witness, and are so related to the one question which was the subject-matter of inquiry . . . and were so linked and blended together in point of time, as to constitute but one act or transaction, and therefore constitute but one offense." *Davenport*, 386 A.2d at 550 (*quoting Anderson*, 101 P. at 387). Similarly, American Jurisprudence informs us "[s]tatements related to different matters may be made the basis of separate counts of perjury, even though they all refer to the same general subject of inquiry and were made at the same hearing." 60A Am.Jur.2d *Perjury* § 53.

Therefore, we must conclude that the essential inquiry in determining whether each individual falsehood could be considered an individual "statement" must be whether each lie related to "different matters" or a single event or were so interrelated as to a single subject matter that they could not amount to individual statements for purposes of Section 4902.

Such an inquiry, however, is only half the question, as the Commonwealth must also establish that the individual falsehoods were material. As noted previously, the Legislature has defined materiality as a statement that "could have affected the course or outcome of the proceedings." 18 Pa.C.S. § 4902(b). The word "could" is the past tense of "can." "Can" is "used to indicate possibility or probability." AMERICAN HERITAGE DICTIONARY, 2d College ed., 232 (1981). Moreover, the plain language of Section 4902(b) is clear and the statement need not affect the "outcome" of the proceedings, so long as it "could" have affected the "course" of the proceedings.

Further illustration of materiality, for purposes of applying the concept, can be found in *Kungys v. United States*, 485 U.S. 759, 769, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). In *Kungys*, the Court explained that the term "material" in the context of perjury was not a "hapax legomenon," but had a long history of use. "Blackstone used the same term, writing that in order to constitute 'the crime of willful and corrupt *perjury*' the false statement 'must be in some point material to the question in dispute; for if it only be in some trifling collateral circumstance, to which no regard is paid,' it is not punishable." *Id.* at 769, 108 S.Ct. 1537 (emphasis in the original). After reviewing the historical concept of materiality and relevant case law, the Court concluded that the central object of the "materiality" inquiry was "whether the misrepresentation or concealment was predictably capable of affecting, i.e., had a natural tendency to affect, the official decision." *Id.* at 771, 108 S.Ct. 1537. Stated differently, the "test is not whether the false statement *actually influenced* the relevant decision-making body, or whether the outcome of the proceedings in which the statement was uttered would have been different ... but

whether the false testimony *was capable of* influencing or misleading the tribunal on the issue before it." 60 AM.JUR.2D *Perjury* § 28 (emphasis added). Moreover, the false statement need not be material to the main issue, so long as it "has a legitimate tendency to prove or disprove some fact that is material, irrespective of the main fact at issue. Thus, a statement will generally support a charge of perjury if it is material to any proper matter of inquiry and it is calculated and intended to bolster the testimony of a witness on some material point or attack the credibility of the witness." 60 AM.JUR.2D *Perjury* § 28.

■ With these concepts in mind, we turn to an examination of the six falsehoods presented in this case. As stated previously, under the Commonwealth's theory of the case, each individual falsehood had to be a "statement" which "could have" altered the course or outcome of the *Dickerson* PCRA court proceedings in order for the Commonwealth to proceed on six separate counts of perjury.

There can be no question that the six separate falsehoods related to the same general subject matter, i.e., that Appellee's testimony before the trial court in his co-defendant's case was false and a result of a scheme set-up by the police and the District Attorney's office. Nevertheless, as explained previously, this fact does not prevent the separate lies from being treated as distinct statements. Rather, in determining whether they comprised six separate statements, the question is whether the individual statements related to "different matters" or a single event or were so interrelated as to a single subject matter that they could not amount to individual statements for purposes of Section 4902.

Applying this concept, we acknowledge that the six separate lies arguably related to three "different matters" as one of them concerned the timing of Appellee's arrest, four of them related to Appellee's interaction with the police, and the sixth statement related to Appellee's dealings with the District Attorney. Therefore, there would be support for treating the falsehoods as three separate "statements."

Under the perjury statute, however, each "statement" must also have had the possibility or probability of altering the course or outcome of the PCRA court's proceedings. This does not mean that the statement must have actually changed the course or outcome of the proceedings. Rather, it is sufficient if the statement had a natural tendency to affect the course or outcome of the proceedings. *Kungys supra.* And, in this case, it is this requirement that we hold the Commonwealth did not establish.

The individual falsehoods were so interrelated that it could not be demonstrated that each one individually had any effect on the course of outcome of the PCRA court's proceedings, much less a possible or probable effect. For example, Appellee's testimony that he was arrested before, and not after, he gave the statement to the police was not possible or probable of influencing the course or outcome of the proceedings. Rather, it was only when considered together with the lies that followed that the import of the statement was clear. Similarly, Appellee's claim that the detectives told him to implicate himself falsely in the Crawford murder was only material within the framework of the two previous lies regarding the fact that the detectives wanted Appellee to implicate Ivan Bingham in the Crawford murder—the false implication was meant to bolster Appellee's credibility in implicating Bingham, but the lie had no possibility or probability of influencing the decision-maker on its own. Finally, Appellee's claim regarding the promises made by Assistant District Attorney Fisk were only material when considered in context of the remaining lies—why would ADA Fisk promise Appellee anything if she received nothing in return? The obvious answer is that she was promised Appellee's testimony against Ivan Bingham, an answer that can be made only when looking at the previous four lies. In short, each individual falsehood, considered alone, was merely a "trifling collateral circumstance" that could not have affected the course or outcome of the proceedings when considered alone. Rather, the statements had such probable or possible effect only when consid-

ered together. For this reason, we affirm the order of the Superior Court vacating the trial court's sentence.[2]

Justices BAER, BALDWIN and Justice FITZGERALD join the opinion.

Justice CASTILLE files a dissenting opinion in which Justice SAYLOR joins.

Justice EAKIN files a dissenting opinion.

Justice CASTILLE dissenting.

In this case we are asked to determine when an individual false statement satisfies the materiality element of the perjury statute, 18 Pa.C.S. § 4902, such that multiple false statements may serve as the basis for multiple counts of perjury. In my view, the Majority Opinion both usurps the jury function and rewrites the perjury statute in such a way as to invite a volume discount for multiple crimes. Therefore, I respectfully dissent.

The Majority, without explicitly acknowledging that it deems the statute to be ambiguous and therefore subject to construction, overlooks the plain language of the statute. There is no need to look beyond the text of a statute when its plain meaning is evident on its face. *See, e.g., Commonwealth v. McClintic*, 589 Pa. 465, 909 A.2d 1241, 1245–46 (2006) (citing *Sternlicht v. Sternlicht*, 583 Pa. 149, 876 A.2d 904, 909 (2005); *Ramich v. Workers' Comp. Appeal Bd. (Schatz Elec., Inc.)*, 564 Pa.656, 770 A.2d 318, 322 (2001)). A court should only resort to other considerations as the primary basis for a decision when the words of a statute are ambiguous. 1

---

**2.** Appellee raises the question of whether the Superior Court granted the proper remedy, since it affirmed the conviction of count one, but reversed the remaining counts. Appellee points out that none of the counts met the materiality requirement, and therefore, Appellee could not have been convicted of perjury at all. We disagree with Appellee, since we find that the statements considered together clearly established a single count of perjury. Accordingly, we affirm the Order of the Superior Court remanding the matter for imposition of a sentence based upon a single count of perjury.

Pa.C.S. § 1921(c); *see also Commonwealth v. Hagan*, 539 Pa. 609, 654 A.2d 541, 544–45 (1995).

Turning first to the question of how many "statements" are constituted by the falsehoods in appellee's testimony, the definition of a "statement" in 18 Pa.C.S. § 4901 is both patently clear and broad: "statement' means any representation...." Here, the Majority applies a test in which "the essential inquiry in determining whether each individual falsehood could be considered an individual 'statement' must be whether each lie related to 'different matters' or a single event or were so interrelated as to a single subject matter that they could not amount to individual statements." Majority Op. at 692, 939 A.2d at 881. Applying this test, the Majority determines that the six falsehoods in question constitute only three "statements" for the purposes of Section 4901.

Although appellee's statements each relate to his fundamental testimony that he lied when implicating Dickerson in the Crawford murder, "[s]tatements relating to different matters may be made the basis of separate counts of perjury, even though they all refer to the same general subject of inquiry and were made at the same hearing." 60A AM.JUR.2D *Perjury* § 53 (2007).[1] In the present case, I would hold that each of the six falsehoods put forth by appellee represents a different statement for purposes of the perjury statute. First, appellee attempted to undermine the detectives' version of events and assert that his initial confession was made under pressure (Count I—relating that the detectives who investigated the Crawford murder arrested him before, not after, eliciting his confession in the homicide). Appellee next testified that the police told him to lie (Count II—asserting that the detectives

1. Federal courts have approved of the charging of multiple counts of perjury arising out of the same transaction or subject matter pursuant to 18 U.S.C. § 1623 (false declarations before grand jury or court). *United States v. De La Torre*, 634 F.2d 792, 795 (5th Cir.1981) ("Separate and distinct false declarations in trial testimony, which require different factual proof of falsity, may properly be charged in separate counts, albeit they are all related and arise out of the same transaction or subject matter."); *see also United States v. Scott*, 682 F.2d 695, 698 (8th Cir.1982); *United States v. Doulin*, 538 F.2d 466, 471 (2d Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976).

told him to falsely accuse a man named Ivan Bingham of the Crawford murder). He then explained why he was motivated to follow the detectives' instructions (Count III—contending that the detectives promised not to proceed against him on a separate pending murder charge if he fabricated a case against Bingham). Appellee elaborated that it was the detectives' idea, not his own, to falsely implicate himself in the Crawford murder (Count IV—relating to appellee's allegation that the detectives told him to falsely implicate himself in the Crawford murder to enhance his credibility). Finally, appellee explained why he was allegedly willing to lie about the Crawford murder, given that he had separate assurances from the police (Count V—recounting that the detectives promised to limit appellee's minimum sentence to five years on the charges arising from the Crawford murder) and from the district attorney's office (Count VI—asserting that an Assistant District Attorney told him that, in exchange for his cooperation, charges in the unrelated homicide would be dropped and his minimum sentence on his Crawford guilty plea would be five years) that his punishment for the Crawford murder would be limited. Clearly, each assertion is a distinct representation, and thus qualifies as a "statement."

Turning next to the materiality requirement, the analysis should begin and end with the plain language of the statute. The statute defines materiality as follows:

> Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

18 Pa.C.S. § 4902(b). Section 4902 is modeled after Section 421.1 of the MODEL PENAL CODE, which provides an identical definition of materiality. *See* 18 Pa.C.S. § 4902 cmt.

Contrary to the Majority's opinion, the proper inquiry to determine whether a statement is material comes from the plain language of Section 4902(b) itself. Section 4902(b) materiality is a fact-driven test, as it depends upon the "given

situation"; thus, similar statements could be deemed material in one case and not in another. This alone, however, does not render the plain meaning of the statute's text ambiguous. Section 4902(b) asks solely whether false statements made by a perjury defendant "could have affected the course or outcome of the proceeding," 18 Pa.C.S. 4902(b), not whether a statement could have done so **standing alone.** Answering the query posed by Section 4902(b) requires a case-specific inquiry, focusing on the effect that the statement may have had on the fact finders decision-making at the prior proceeding.

In interpreting the "materiality" requirement, the Majority ignores the actual language of the statute and falls prey to the same instinct that led the Superior Court to conclude that a false statement could only be material under Section 4902(b) if that statement "could have, **standing alone,** affected the outcome of the Dickerson PCRA hearing." Super. Ct. Op. at 5 (emphasis added). Likewise, the Majority, despite the lack of ambiguity on the face of Section 4902(b), has chosen to import a materiality test from a legal treatise and a single divided opinion of the Superior Court. The Majority states that the Commonwealth must prove that each statement could have affected the course or outcome of the proceeding **by itself.** To bolster its rewriting of the statute, the Majority states that a false statement is material when "the misrepresentation or concealment was predictably capable of affecting . . . the official decision." Majority Op. at 692, 939 A.2d at 882 (quoting *Kungys v. U.S.,* 485 U.S. 759, 771, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988)). The Majority seems to assume that this means each statement must be considered completely divorced from the context in which it was made. The Majority's test thus requires the Commonwealth to establish that each statement, **by itself,** affected the course or outcome of the proceedings. But the Majority is not done. Having determined that no individual statement at issue meets its extra-statutory threshold, the Majority reads yet another test into the statute and permits the materiality requirement to be met by the collective effect of the statements considered together.

I think it better to apply the plain text of Section 4902(b). Under that text, I would find that there was sufficient evidence to support a finding that appellee's six discrete statements each warranted a conviction for perjury. The central relevance and purpose of appellee's testimony at the *Dickerson* PCRA hearing was to convince the PCRA court that appellee had lied in incriminating Dickerson (and himself) at Dickerson's trial, and, as a result, the court should find that Dickerson was wrongly convicted of murder. Appellee could have just made the assertion, "I lied at Dickerson's trial," to make Dickerson's after-discovered evidence point in the barest sense. But appellee went further and sought to explain why he lied, and thereby give the PCRA court a reason to credit his PCRA account. As a practical matter, the credibility of an individual witness is largely judged by the story told: the more complete and plausible the story, the greater the probability it will be believed. The credibility of the recantation here was bolstered by appellee's explanation of why he testified differently at the earlier proceeding. Indeed, the primary reason a witness would seek to explain the motivation for what he now claims was prior false testimony would be to influence the present fact finder's decision concerning his present credibility.

When examining the practical effect of the statements separately, it is apparent how each statement was designed to affect the fact finder's judgment, either in an effort to enhance appellee's credibility or to explain the reasons motivating his alleged false confession. Appellee did not confine himself to some generalized notion of pressure, coercion, or official corruption. Instead, appellee testified to specific instances that suggested a logical, connected progression of governmental misconduct all designed to coerce him to implicate himself and to testify falsely against his co-defendant. The statements appellee made, listed above, provided the PCRA court with six separate, compelling reasons to believe that his original confession was false and, accordingly, that there was sufficient evidence to support the fact finder's conclusion that the six

statements underlying appellee's perjury charges "could have affected the course or outcome of the proceeding." [2]

Even aside from whether the plain language of the statute, or the Majority's rewritten statute, should apply, the Majority's "interpretation" leads to an absurd result: it provides an incentive for perjurers to increase the number of false statements in their testimony. *See* 1 Pa.C.S. § 1922(1) (noting presumption that General Assembly does not intend result that is absurd or unreasonable). This Court recognized in *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313, 323 (1980), that in every criminal proceeding there are ultimate issues of fact to be resolved, *i.e.*, whether the defendant is guilty of the crimes for which he stands accused, as well as factual predicates on which a fact finder relies to decide those ultimate issues. Factual predicates, therefore, are essentially the evidence the fact finder believes to be true, which the fact finder considers when deciding the ultimate issue at trial. The extent to which a fact finder finds a party's presentation of the case compelling depends, at least in part, on the credibility of the witnesses the party presents. *See Commonwealth v. Robinson*, 507 Pa. 522, 491 A.2d 107, 110 (1985). The more complete the story, the greater the probability that it will be considered true. The Majority's revision of Section 4902(b), however, ignores this reality and implicitly encourages a witness providing false testimony to create the most compelling story he or she may conceive without fear of reprisal for the additional false events he or she may relate in telling the fictional tale.[3]

2. It is significant that the Superior Court failed to provide a rationale to explain why Count I had the ability to influence the outcome of the *Dickerson* PCRA court, but Counts II through VI did not. Clearly, if appellee's assertion that the detectives arrested him before his confession could have influenced the jury, it is illogical to believe that appellee's assertions that he was promised certain deals in exchange for his confession could have had no effect on the jury.

3. Any "construction" of Section 4902(b) that would encourage a perjurer to reinforce his or her testimony with additional false statements would frustrate an obvious purpose of criminalizing perjury, namely, to ensure that the fact finder at trial reaches an accurate result. Other jurisdictions have recognized that the materiality requirement of perjury helps to pinpoint exactly when that interest is in peril.

Finally, I note that by concluding that the six falsehoods in question consist of three separate statements supporting a single perjury charge, the Majority avoids appellee's argument that the Commonwealth's multiple perjury charges offend double jeopardy principles. Because I would conclude that appellee's false statements are six separate material statements, and thus support six perjury charges, I will address the Commonwealth's argument.

Double jeopardy prohibits multiple punishments for the same offense. *Abney v. United States,* 431 U.S. 651, 660, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *Commonwealth v. Bostic,* 500 Pa. 345, 456 A.2d 1320, 1322 & n. 4 (1983) ("At least in the 'multiple punishments' context, it seems clear that the double jeopardy proscription embodied by the Fifth Amendment of the United States Constitution is coextensive with that embodied by Article 1, Section 10 of the Pennsylvania Constitution."). The question of whether multiple punishments have been given for the same offense is a factual issue. *See Commonwealth v. Andrews,* 564 Pa. 321, 768 A.2d 309, 313 (2001) (citing *Commonwealth v. Koehler,* 558 Pa. 334, 737 A.2d 225, 245 (1999)). In cases of perjury, double jeopardy precludes a court from imposing multiple punishments based on a repeated misrepresentation of the same fact. Here, as detailed above, appellee made six separate statements pertaining to events involving his alleged false confession to the Crawford murder, describing separate allegations of what actions the detectives took, what the detectives told him, and what both the district attorney's office and the police promised him. I would hold that each perjury count related to a separate allegation involving his supposed false confession and, there-

The requirement that the statement be material to an official proceeding isolates those occasions where inaccuracy may significantly impair important governmental interests. False statements affecting the outcome of such proceedings can jeopardize essential functions of government: the determination of guilt in a criminal trial, the adjustment of interests in a civil trial, and the development of a legislative record, to name only a few.

*People v. Chaussee,* 880 P.2d 749, 763 (Colo.1994) (interpreting perjury statute modeled after MODEL PENAL CODE Article 241.1).

fore, his six convictions do not implicate double jeopardy concerns.

For the foregoing reasons, I respectfully dissent.

Justice SAYLOR joins this dissenting opinion.

Justice EAKIN dissenting.

I find the majority's consolidation of King's six perjurious statements into a single offense is ill conceived. King lied under oath at least six times—each lie supported the other, each a distinct brick in the wall of deception that he erected. Each was material to the ultimate purpose of providing exculpatory testimony. I find no reason to combine separate lies based on commonality of subject matter of the individual false statement.

The flaw in the majority's logic, in my view, is its interposition of the phrase "by itself" into the definition of materiality. *See* Majority Op., at 690, 939 A.2d at 880–81. While it is true each falsehood must be shown to be material, the analysis cannot be made as if the other five lies did not exist. That is, one must evaluate each lie in context, the entirety of all the testimony including the other lies. The question is, could each lie have affected the course of the proceeding? The question is not whether each lie *did* affect the *outcome*. We must ask, "*Could*, not did, each lie here have affected the *course*, not the outcome, of the proceeding?"

Was the course of the proceeding affected by each lie? If King had told the truth instead of the last lie, he would undo the previous five lies. They would have been exposed, his purpose of false exculpation thwarted. Thus, the final lie was necessary if the course of the proceeding was to continue as his purpose required. The same is true for each of his lies, for had any lie been replaced with the truth, the course of the PCRA proceeding would have been much different. Any trial attorney recognizes that materially false testimony necessarily changes the case; it changes strategy, one's course of action, the witnesses to be called and their examination, one's argument to court and jury. It may or may not affect the

outcome, but it inevitably alters the proceeding, and that determines the issue before us today.

Putting a common label of subject matter on some of the statements does not negate the fact that each false statement was material, and creates a proper basis for separate counts of perjury. The same lie told on two occasions is still two lies, not one, and each creates the chance to alter the proceeding. Having lied once, one should not be free to repeat the lie *ad nauseum* with impunity. King made six distinct significant material perjurious statements, and each could have affected the proceeding's course, much less its outcome. Therefore, I respectfully dissent.