J-A27033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL R. SIEMINKEWICZ, | : | |
| | : | |
| Appellant | : | No. 456 WDA 2017 |

Appeal from the Judgment of Sentence October 28, 2016
in the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0001830-2014

BEFORE: BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED JANUARY 11, 2018**

Paul R. Sieminkewicz ("Paul") appeals from the judgment of sentence imposed following his convictions of perjury, false swearing, and criminal attempt (identity theft). ***See*** 18 Pa.C.S.A. §§ 4902(a), 4903(a)(1), 901(a). We affirm.

Paul and Kerri Sieminkewicz ("Kerri"), who were married for twenty-two years and had four children together, separated in October 2012. In December 2012, Discover Card sent Kerri a notice that someone had applied for a credit card in her name. Kerri had not applied for a Discover credit card, but verified that her name, social security number, and date of birth were included in the application. The application included Paul's phone number, home address, and email address.

The trial court set forth what transpired next as follows:

[Paul] filed a PFA against [Kerri] alleging that she abused [Paul]. At the PFA hearing, [Paul] testified that he had a text from [Kerri] in January stating, "you know, the judge is always going to believe me." [The message was an "unverfifiedVtext.com/sender" from 412-613-****.] [Paul] further testified that he did not know what an unverified Vtext was and had never conducted one. … [Kerri] testified that her phone number was 412-613-[****]. She further testified that, while [Paul] testified at the PFA hearing that she contacted him through text messages, she never contacted him through text nor Vtext messages, and [did not] know what Vtext was before the hearing.

***

Detective Thomas Horan [("Detective Horan")] also attended the PFA hearing and[,] further[,] was involved in obtaining the search warrant for [Paul's] residence, 105 North Walnut Street. Detective Horan … described [the home] as a white structure with two stories. [Paul] arrived at the residence to let him in to conduct the search. Detective Horan testified that he found flash drives and a Dell laptop that he believed could have been used to apply for the Discover [credit c]ard.

Lastly, Glenn Bard (hereinafter Bard) testified as an expert in digital forensics and technology. Bard explained the Vtext process and how it allows someone to send a text message and make it look like it is coming from someone else's phone number since it is actually coming from a computer. Ward conducted a search on [Paul's] computer and found that the Vtext website had been accessed through the computer system in the [hiberfil[1]] file. Further, the Vtext website was also saved as a bookmark in a JSON file, which was then later deleted on March 4, 2013. Bard found [Kerri's] number in the same [hiberfil] file as the history of Vtext website. Bard further found fourteen (14) hits in the computer system of the exact same IP address that Detective Horan gave him, which was the IP address received from Discover Card. When searching for information regarding the Discover Card page, Bard found two instances of internet

---

[1] A hiberfil file is created by the operating system when a computer goes into hibernation mode.

history in a file named the page file, which is very recent, and two entries of Discover Card in the actual page file. Specifically, the two URL pages that Bard found were the Discover [Card] page that allows one to apply for a credit card, and the page concerning the terms of usage for applying for a Discover credit card. He also found a bookmark for Discover [Card] dated October 24, 2012.

Trial Court Opinion, 12/5/15, at 2-3 (footnote and citations omitted, footnote added).

In March 2014, Paul was charged with perjury, false swearing, attempted identity theft, and identity theft. Paul filed Pre-Trial Motions. The trial court granted Paul's Motion seeking the dismissal of the identity theft charge, but denied the remaining Motions. The case proceeded to a bench trial before the Honorable Christopher Feliciani. Following the trial, Judge Feliciani found Paul guilty of perjury, false swearing, and attempted identity theft. The trial court sentenced Paul to twenty-three months of intensive supervision, with six months of home electronic monitoring, and a consecutive probation term of five years. Paul filed a Post-Sentence Motion, which the trial court denied following a hearing.

Paul filed a timely Notice of Appeal and a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Paul raises the following questions for our review:

1. Whether the [trial] court [] erred in failing to grant a [M]otion for judgment of acquittal despite the Commonwealth failing to present, *inter alia*, evidence of: a) materiality necessary for the perjury charge; and b) corroboration of falsehood necessary for both the perjury and false swearing charges[?]

2. Whether the [trial] court [] erred in denying the [M]otion *in limine* pertaining to evidence of [Kerri's] phone number being found on [Paul's] computer upon the forensic examination performed by computer forensics expert [] Bard[?]

3. Whether the suppression court erred in failing to suppress evidence obtained as a result of the search warrant executed at the incorrect address[?]

Brief for Appellant at 5.

In his first claim, Paul contends that his Motion for judgment of acquittal as to his perjury and false swearing convictions should have been granted because the evidence was speculative.[2]  ***Id.*** at 10, 19; ***see also id.*** at 11 (noting that the statements in question are Paul's testimony at the PFA hearing that he had received a text message from Kerri stating that the judge would believe her, that Kerri contacted him through an unverified Vtext, and that he had no knowledge of Vtext process).  With regard to the perjury conviction, Paul argues that the Commonwealth failed to establish the materiality and corroboration elements.  ***Id.*** at 11, 13-18.  Paul asserts that materiality was not established because the above testimony was irrelevant to determining whether Paul was subject to abuse.  ***Id.*** at 13; ***see also id.*** (stating that there were no allegations of abuse referring to the text message).  Paul claims that the text message evidence was thus immaterial to the outcome of the PFA hearing.  ***Id.*** at 14.

---

[2] Paul notes that false swearing has the same elements as perjury, except for a materiality element.  Brief for Appellant at 11.  While Paul focuses his argument on the perjury conviction, we will address both convictions.

Paul also argues that Bard's testimony did not corroborate Paul's statement that he knew nothing about the Vtext process. *Id.* at 15. Paul asserts that while Bard testified regarding a bookmark on Paul's computer for the Vtext website, which had been deleted on March 4, 2013, no testimony was provided as to whether the bookmark was in place at any time prior to this date. *Id.* at 16. Paul further points out that because there was no time stamp on any data contained in the hiberfil, the Commonwealth did not establish when the Vtext website was placed in the hiberfil. *Id.* at 16-17. Paul thus contends that there is no evidence demonstrating that he accessed the Vtext website prior to the PFA hearing in February 2013. *Id.* at 18.

> In reviewing a challenge to the trial court's denial of a motion for judgment of acquittal, we are guided by the following precedent:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Abed*, 989 A.2d 23, 26–27 (Pa. Super. 2010) (citation and emphasis omitted).

The Crimes Code defines perjury, in pertinent part, as follows:

**(a) Offense defined.**--A person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true.

**(b) Materiality.**--Falsification is material, regardless of the admissibility of the statement under rules of evidence, if it could have affected the course or outcome of the proceeding. It is no defense that the declarant mistakenly believed the falsification to be immaterial. Whether a falsification is material in a given factual situation is a question of law.

\*\*\*

**(f) Corroboration.**--In any prosecution under this section, except under subsection (e) of this section, falsity of a statement may not be established by the uncorroborated testimony of a single witness.

18 Pa.C.S.A. § 4902; *see also id.* § 4902, cmt. (stating that the essential elements of perjury "are (1) oath or affirmation; (2) materiality of the lie; and (3) requirement that the lie be told in an official proceeding involving a hearing."); *Commonwealth v. King*, 939 A.2d 877, 880 (Pa. 2007) (stating that "in order to constitute the offense of perjury, there must be a false

- 6 -

statement, *i.e.*, a representation, which could have affected the course or outcome of the proceeding.").

The Crimes Code defines false swearing, in pertinent part, as follows:

**(a) False swearing in official matters.**--A person who makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of such a statement previously made, when he does not believe the statement to be true is guilty of a misdemeanor of the second degree if:

(1)     the falsification occurs in an official proceeding[.]

*** 

**(c) Perjury provisions applicable.**--Section 4902(c) through (f) of this title (relating to perjury) applies to this section.

18 Pa.C.S.A. § 4903.

The trial court addressed Paul's claims as follows:

In the present case, [Kerri] testified that she was a party to a PFA between her and [Paul] in February 2013 before Judge [John J.] Driscoll [("Judge Driscoll")] and was subject to a PFA being issued against her. (T.T. 8/3-5/2016 at 89). [Kerri] testified that she was sworn in and testified to Judge Driscoll regarding a series of events committed by [Paul], which concluded with a text message [Kerri] allegedly sent to [Paul] stating, "[Y]ou know, the judge is always going to believe me." (T.T. at 91). [Kerri] testified that she did not send said text message to [Paul]. (T.T. at 91).

During trial[,] the Commonwealth and defense counsel stipulated to the admission of redacted excerpts of the February 25, 2013 PFA hearing in which [Paul] testified under oath that [Kerri] sent him a text message in January, via an unverified Vtext, stating that the judge will always believe her, and he had no knowledge regarding the Vtext process. (T.T. at 111.) Evidence presented at trial established that Detective [] Horan was present for the PFA hearing and following said hearing, he applied for a search warrant of [Paul's] home. (T.T. at 156). Through his investigation, Detective Horan located digital evidence including

- 7 -

[Paul's] laptop. (T.T. at 171-172.) The digital evidence was then given to digital forensic expert [] Bard for the purpose of examining the evidence to determine if the devices were used to send a Vtext message and apply for a Discover [c]redit [c]ard in [Kerri's] name. (T.T. at 183.)

[] Bard testified at trial that [Paul's] laptop was searched and there was evidence of the Vtext website in two locations. (T.T. at 233.) [] Bard was not able to determine a specific date and time of when the website was actually visited; however, as the information was found in the hiberfil, [] Bard testified that it was "recent." (T.T. at 235). Additionally, [] Bard testified that he found the phone number associated with [Kerri] in the same hiberfil on [Paul's] laptop. (T.T. at 236). [] Bard testified that the other location of Vtext was found in a bookmark on [Paul's] computer and it was deleted between March 3, 2013[,] and March 4, 2013. (T.T. at 239).

Despite [Paul's] contention that the Commonwealth did not establish the materiality element for the [p]erjury charge beyond a reasonable doubt[,] as required by 18 Pa.C.S.A. § 4902(a), the [trial c]ourt finds that while it did not actually affect the outcome of the hearing, [Paul's] testimony regarding the Vtext that he received from [Kerri] was a factor that Judge Driscoll likely considered in determining whether or not to grant the PFA and had a possibility of affecting the outcome of the hearing as it was capable of influencing or misleading the [trial c]ourt. This is especially true when Judge Driscoll responded to [Paul's] statement by stating that "So abuse of a PFA, I suppose that could be some kind of an abuse." (PFA Transcript at 10).

Likewise, the [trial c]ourt finds that the Commonwealth has established the corroboration element of the Perjury and False Swearing charges beyond a reasonable doubt through the testimony of [Kerri] and [] Bard. At trial, [Kerri] testified that she never sent the text message in question to [Paul]. Additionally, [Kerri] testified that during the PFA hearing, [Paul] was directly asked if he knew what Vtext was, and he indicated that he did not know. (T.T. at 94). [] Bard corroborated [the] testimony by testifying that after examining [Paul's] computer, he found evidence of the Vtext website and [Kerri's] phone number in the same file on [Paul's] computer. Although [] Bard could not testify to the actual date and time of when the website was visited, [] Bard testified that it was recent and the

- 8 -

bookmark for Vtext was removed from [Paul's] computer between March 3, 2013[,] and March 4, 2013. The [trial c]ourt finds that the Commonwealth has presented sufficient direct and circumstantial evidence for the jury to conclude that [Paul's] statements to Judge Driscoll were knowingly false[,] and they were corroborated as false through the testimony of [Kerri] and [] Bard.

Trial Court Opinion, 2/27/17, at 4-6.

Upon our review of the record, we agree with the trial court's reasoning and conclude that there was sufficient evidence to demonstrate that Paul knowingly made false statements under oath; the statements were material; and that Kerri and Bard corroborated the statements. **See id.**; **see also** 18 Pa.C.S.A. §§ 4902, 4903; **King, supra**. Thus, the evidence supported the false swearing and perjury convictions. Based upon the foregoing, Paul's first claim is without merit.

In his second claim, Paul contends that the trial court erred in denying his Motion *in Limine*. Brief for Appellant at 19. Paul argues that Bard's testimony regarding his search for Kerri's phone number on Paul's computer should have been excluded from trial because it was irrelevant. **Id.** at 19-20. Paul asserts that Bard's report indicated that the purpose of his testimony was to determine whether the computer system was used to send Vtext messages to Kerri. **Id.** at 19. Paul claims that since any messages

sent to Kerri were irrelevant to the trial, Bard's testimony should have been inadmissible. *Id.* at 20.[3]

Our standard of review of a denial of a motion *in limine* is as follows:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard of review. The admission of evidence is committed to the sound discretion of the trial court, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Moser*, 999 A.2d 602, 605 (Pa. Super. 2010) (citation omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); *see also* Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.").

The trial court addressed this claim as follows:

_____

[3] Paul has not cited to any case law to support his contention. *See* Pa.R.A.P. 2119(a) (stating that the argument shall contain pertinent citations to authority).

During trial, [] Bard testified that he received digital evidence from Detective Horan for the purpose of examining the evidence to determine if the devices were used to apply for a Discover credit card and send a Vtext message. [The trial c]ourt is of the opinion that evidence of [Kerri's] phone number found on [Paul's] computer was relevant and crucial to the Commonwealth's case to establish the Commonwealth's theory that [Paul] used [Kerri's] phone number to send a Vtext to himself. The [trial c]ourt finds that this was ultimately a question of weight to be considered by the jury ….

Trial Court Opinion, 2/27/17, at 8-9 (some capitalization omitted).

We agree with the sound reasoning of the trial court. *See id.*; *see also Tyson*, 119 A.3d at 358. We additionally note that Paul had the opportunity to cross-examine Bard regarding the report, but failed to do so. Because the trial court did not abuse its discretion in denying Paul's Motion, we conclude that his second claim is without merit.

In his third claim, Paul contends that the evidence obtained upon the execution of the search warrant should have been suppressed. Brief for Appellant at 20. Paul argues that the warrant was invalid on its face because it was issued for a building at "105 South Walnut Street," when Paul's address was "105 North Walnut Street." *Id.* Paul asserts that the search warrant requirement of particularity under Pennsylvania Rule of Criminal Procedure 206 was violated. *Id.* at 20-21.

In reviewing the denial of a motion to suppress, our responsibility is to determine whether the record supports the suppression court's factual findings and legitimacy of the inferences and legal conclusions drawn from those findings. If the suppression court held for the prosecution, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the

- 11 -

record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, the appellate court may reverse if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Arnold*, 932 A.2d 143, 145 (Pa. Super. 2007) (citation omitted).

"[S]earch warrants should be read in a common sense fashion and should not be invalidated by hypertechnical interpretations." *Commonwealth v. Orie*, 88 A.3d 983, 1003 (Pa. Super. 2014) (citation and quotation marks omitted). "[A] practical, common-sense approach should be taken in determining whether the place to be searched is specified with sufficient particularity." *Commonwealth v. Belenky*, 777 A.2d 483, 486 (Pa. Super. 2001) (citation omitted).

> [A] warrant must describe the place to be searched and the items to be seized with specificity, and the warrant must be supported by probable cause. The place to be searched must be described precise[ly] enough to enable the executing officer to ascertain and identify, with reasonable effort, the place intended, and where probable cause exists to support the search of the area so designated, a warrant will not fail for lack of particularity.

*Id.* (citation and quotation marks omitted).

Here, the search warrant application listed the place to be searched as "105 South Walnut Street located in Ligonier Borough, Westmoreland County. The residence is described as a two story residence with white lab board style siding and gray block. This described residence is where Paul [] resides." Application for Search Warrant, 3/7/13.

- 12 -

At the suppression hearing, Detective Horan testified that the police searched the residence at 105 North Walnut Street. N.T., 9/25/15, at 60; *see also id.* at 63 (wherein Detective Horan describes the home at 105 North Walnut Street as a "white structure" with "two stories."). Detective Horan stated that Paul was not present at the home when the police arrived. *Id.* at 62. Following a phone call, Paul arrived at the home at 105 North Walnut Street and allowed the police to enter the home. *Id.*

We conclude that the evidence supported the trial court's decision to deny the Motion to suppress. The evidence demonstrated that the location searched was the location that the police officers intended to search, *i.e.*, the residence where Paul resided. Indeed, Paul's argument ignores the fact that, although the warrant was issued for 105 South Walnut Street, as opposed to 105 North Walnut Street, the warrant's descriptions of the searched residence at 105 North Walnut Street corroborate the warrant's description of the residence. Thus, the error in the address listed did not invalidate the search warrant. *See Belenky*, 777 A.2d at 487 (holding that an incorrect address did not invalidate the search warrant where the police did not go to the "wrong" location, but simply did not properly describe the "right" location, and only the appropriate premises were searched); *accord Commonwealth v. Washington*, 858 A.2d 1255, 1258 (Pa. Super. 2004) (holding that error in address to be searched did not invalidate the search

warrant where the evidence showed that there was no ambiguity about the location of the residence to be searched).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  1/11/2018